## SUPREME LODGE NATIONAL RESERVE ASSOCIATION v. HATTIE B. TURNER.

Delivered June 25, 1898.

**1. Mutual Benefit Insurance—Suspension of Lodge.**

Members of a subordinate lodge of a mutual benefit association which has been suspended for failure to pay an assessment in accordance with the by-laws, are not entitled to participate in death benefits during such suspension, where the regulation visits such penalty upon the members of lodges in default.

**2. Same—Suspension of Member.**

The failure of a subordinate lodge of a mutual benefit association to remit an assessment within the time fixed by the by-laws does not operate as a suspension of its individual members and require them to make application for reinstatement, where the by-laws merely provide that for such neglect the lodge shall be suspended and its members be deprived of the right to participate in death benefits during such suspension, while a separate regulation provides for the suspension of individual members.

**3. Same—Evidence of Regular Standing.**

A finding that a subordinate lodge of a benefit association of which the deceased was a member was in good and regular standing, although it had never paid a fine imposed upon it at a time when it was suspended for nonpayment of an assessment, is justified by evidence that such assessment and many subsequent ones were paid and received by the association.

**4. Same—Statements in Unwarranted Application.**

Statements in an application for reinstatement improperly required by the supreme lodge of a benefit association of the members of a lodge suspended for non-payment of an assessment, are not binding upon them where the by-laws only authorize a suspension of the lodge for such cause, but not of its individual members.

**5. Same—Estoppel by Receipt of Assessments.**

The supreme lodge of a mutual benefit association is estopped from denying that a subordinate lodge was in good standing at the time of a member's death, although a fine imposed on it for nonpayment of an assessment had not been paid, when such assessment and several subsequent ones had been remitted to and accepted by the supreme lodge.

**6. Same—Reinstatement of Member.**

A member of a mutual benefit association under whose by-laws suspended members are entitled to reinstatement "if living and in good health," is, as a matter of contract, entitled to such reinstatement if living and in good health when the application is made.

APPEAL from Hunt. Tried below before Hon. HOWARD TEMPLETON.

*Matlock, Cowan & Burney,* for appellant.

*Craddock & Looney,* for appellee.

BOOKHOUT, ASSOCIATE JUSTICE.—This suit was brought by Hattie B. Turner, wife of L. C. Turner, deceased, against Supreme Lodge National Reserve Association on death benefit certificate No. 1224, issued by the Railway Employes Fraternal Beneficial Association.

Plaintiff alleged, in substance, as follows: That on December 14, 1892, the said Railway Employes Fraternal Beneficial Association executed and delivered to L. C. Turner the following death benefit certificate:

"This certificate, issued by and under the authority of a charter granted by the State of Missouri to the Supreme Lodge of Railway Employes Beneficial Association, witnesseth: That Lewis C. Turner, a member of Greenville Lodge No. 55 of said order, located at Greenville, in the State of Texas, is entitled to all the rights and privileges of membership in the Railway Employes Fraternal Beneficial Association, and to participate in the death benefit fund to an amount not to exceed the sum of two thousand dollars, according to the by-laws of said supreme lodge, now or hereafter in force, which sum shall, at his death, be paid to Hattie B. Turner, bearing relationship of wife.

"This certificate is issued upon the express condition that said L. C. Turner shall, in every particular, while a member of this order, comply with all the laws, rules, requirements now in force, or that may at any time hereafter be enacted, and in case of any failure or default will at once lapse and become void. The said member's age is 56, and his rate of assessment is one dollar and seventy-six cents.

"In witness whereof, the said Supreme Lodge of Railway Employes Fraternal Beneficial Association has caused their certificate to be signed by its supreme president, attested by its supreme secretary, and its corporate seal to be hereto affixed at Kansas City, Missouri, this 14th day of December, 1892.

[L. S.]        "F. W. SEARS, Supreme President.
"Attest: J. C. HENNESSY, Supreme Secretary."

That after the execution and delivery of said certificate the name of the association was changed from the Railway Employes Fraternal Beneficial Association to the Supreme Lodge National Reserve Association.

That L. C. Turner died January 2, 1895, and that until the time of

his death he paid all dues and assessments due by him to the association, according to its by-laws, and in all respects complied with the by-laws. That at the time of his death he was a member of said association in good standing.

That due notice of the death of said L. C. Turner had been presented to the appellant's association, and that it had failed and refused to approve said proofs, and had wrongfully and illegally rejected the same, and failed to levy any assessment for the amount due plaintiff, and failed to pay the same or any part thereof. Plaintiff asked for judgment for $2000, costs of suit, and general relief.

Defendant answered by denial and special answer, in substance, as follows: That it was a fraternal benevolent association and had no capital stock, and that its relief fund was created and sustained by assessments made upon its members. That its association, when first organized, was called the Railway Employes Fraternal Beneficial Association, and was afterward, by amendment of its charter, changed to that of the Supreme Lodge National Reserve Association. That said association on December 14, 1892, executed and delivered to L. C. Turner death benefit certificate No. 1224, for a sum not to exceed $2000, as stated in plaintiff's petition.

That said certificate was issued to said L. C. Turner upon the faith of certain statements and representations contained in his application for membership in defendant's association, setting up what said representations were, and that the same were not true. That said Turner was a member in good standing in defendant's association until October 10, 1893, when he was suspended for nonpayment of assessment No. 14, and was reinstated upon his application on November 1, 1893. That he was again suspended on August 22, 1894, for nonpayment of assessment No. 7, series of 1894, and that he was again reinstated on his application on August 27, 1894. That in his application for reinstatement he made certain statements and representations, setting out what they were, which statements defendant alleged were untrue—setting out in detail in what particular the representations were untrue; and that the death of Turner resulted from the excessive use of intoxicating liquors, which was warranted against in his application for reinstatement. That upon defendant's learning that Turner did not make truthful statements in his application for reinstatement, defendant offered to return to plaintiff the six assessments paid by Turner subsequent to his suspension on August 22, 1894.

Plaintiff filed her first supplemental petition, in which she alleged that if L. C. Turner was suspended at all in August, 1894, it was only by a temporary suspension of subordinate lodge at Greenville, Texas, of which Turner was a member, and that under the laws of defendant's association that neither L. C. Turner nor said subordinate lodge were ever legally suspended, but that if said lodge was suspended such suspension only existed for a day. Said supplemental petition set up in

detail the law under which the supreme lodge purported to act, and set up that under said law said Turner was not legally suspended.

Defendant replied to said first supplemental petition by general denial, and special answer setting up different by-laws of the defendant association, alleging that said Turner was legally suspended in August, 1894.

There was a trial of the cause before the court without a jury. The court made special findings of fact and conclusions of law, and rendered judgment against the defendant in the sum of $2300, with interest from date at 6 per cent per annum and costs of suit; to which conclusions of law and findings of fact, and the judgment of the court thereon, the defendant then and there excepted and gave notice of appeal, and has duly perfected its appeal to this court.

*Opinion.*—Appellant's first assignment of error complains of the following finding of fact filed by the trial judge: "I find that the supreme officers, because of the technical suspension of Greenville lodge No. 55, required the individual members to make application for reinstatement, as though they had each been individually suspended, but as I find it was not such a suspension under the laws of the defendant as to require or call for an individual application for restoration, I believe that any other finding on that point is immaterial. I find that all during the months of August and September, 1894, L. C. Turner was alive and in good health, within the meaning of the terms as used in the by-laws of defendant."

The grounds of objection are, "that the suspension of Greenville lodge No. 55, of which L. C. Turner was a member, was not a technical suspension of said lodge, but a legal and proper suspension of said lodge under the laws of defendant's association, and the suspension of Greenville lodge No. 55 under law No. 111 of said association, suspended each member thereof and deprived them of the benefits of the death benefit fund during the suspension of said lodge. The only way that a member thereof could be reinstated was either by the reinstatement of the suspended lodge within thirty days after its suspension, or by the application for reinstatement by the individual members thereof within ninety days. The suspension of the lodge suspended each member thereof, and was such a suspension of L. C. Turner as to require or call for his application for reinstatement."

The laws regulating the assessment, reports, remittances, and penalty for failing to make remittances by subordinate lodges are found in defendant association's by-laws Nos. 50, 51, and 111, which read:

"Law 50. The secretary of a subordinate lodge shall forward to the supreme secretary the amount of the assessment, together with his report, so as to reach the office of the supreme secretary not later than the 17th of the month following that in which the assessment was issued; such report to be made out upon blanks furnished by the supreme lodge for that purpose, all remittances for assessments to be made by draft or

money order, made payable to such bank as may be designated by the supreme lodge, or executive committee.

"Law 51. Should any lodge fail to have the amount of each assessment in the hands of the supreme secretary within the time specified by law 50, it shall be notified by the supreme secretary, through their president and secretary, that such lodge is delinquent, and if report and remittance are not received within ten days from the date of such notice, said lodge shall stand suspended, without any further action being necessary, and shall stand suspended until all arrearages are paid, together with a fine equal to ten cents for each member of the lodge suspended on said report, provided that such lodge must be reinstated within thirty (30) days next succeeding such suspension, if at all."

"Law No. 111. To suspend or dissolve a subordinate lodge, a two-thirds vote of all the members present at any session of the supreme lodge shall be required; provided, that any subordinate lodge may be suspended, and the members under its jurisdiction deprived of all benefits from the death benefit fund by the supreme president, whenever such subordinate lodge shall refuse or neglect to make its returns, or fail to pay its assessments to the general or death benefit fund within the legal time."

Did the failure of Greenville lodge to remit assessment No. 7, series 1894, within the time fixed by the by-laws operate as a suspension of each member of the lodge; and was each member required to make an individual application for reinstatement after such failure?

The secretary of Greenville lodge No. 55 failed to remit assessment No. 7, series of 1894, within the time required by law 51 above, and on August 12, 1894, the supreme secretary at Kansas City wrote to the secretary of Greenville lodge No. 55 that the remittance had not been received, and unless the same was received by August 22d the lodge would stand suspended. On August 22d the secretary of Greenville lodge forwarded his report and collection for assessment No. 7, amounting to $10.31, the same being collection of assessments for nine members of said lodge, including L. C. Turner, said report and money being received by the defendant association on August 25, 1894, and retained by it.

By the terms of law 51, above quoted, on the failure to forward an assessment by a subordinate lodge to the supreme lodge within ten days from the time prescribed by law 50, said lodge shall stand suspended until all arrearages are paid, together with a fine of ten cents for each member of the lodge suspended on said report; provided, that such lodge must be reinstated within thirty days next succeeding such suspension, if at all. This law has reference to the suspension of the lodge, as a lodge, and not the individual members of the lodge.

Appellant insists that under law 111 above quoted, that the suspension of Greenville lodge No. 55 suspended each member of the lodge. It is provided by this law that a subordinate lodge may be suspended or dissolved by a two-thirds vote of all the members present at any session of the supreme lodge. It is not claimed that any such vote was ever had.

By the terms of law 111 any subordinate lodge may be suspended and the members under its jurisdiction deprived of all benefits from the death benefit fund by the supreme president whenever such subordinate lodge shall refuse or neglect to make its returns or fails to pay its assessments to the general death benefit fund within legal time. The obvious meaning of this law is, that the supreme president when the subordinate lodge refuses or neglects to pay its assessments to the death benefit fund, may suspend such lodge, and when so suspended the members would not be entitled to participate in the death benefit fund during such suspension. Supreme Lodge v. Abbott, 82 Ind., 1; Niblack on Ben. Soc., sec. 276. This law does not suspend the member, but suspends the lodge and fixes a penalty upon the members of a suspended lodge by refusing to permit a member of such lodge to participate in the death benefit fund during such suspension.

The law of the defendant association regulating the collection of assessments from members and fixing a penalty for failure to pay the same is law 49, which, after prescribing how an assessment shall be levied and notice thereof given to the subordinate lodge, reads:

"Any member who fails to pay an assessment within the time specified above, shall stand suspended and be so reported without any action of the lodge being necessary, thereby causing an immediate suspension of his certificate and a forfeiture of all rights and benefits thereunder until reinstated.

"Any member who may become suspended through failure to pay his assessments within the time required, may, if living and in good health, make application for reinstatement any time during the next succeeding ninety days after such suspension, by paying personally to the secretary of his lodge the amounts due and accrued during his suspension, and filing his application for reinstatement upon the blank furnished by the supreme lodge with the secretary. Such application, together with all assessments, to be forwarded immediately by the secretary to the supreme secretary. If the application for reinstatement is approved by the supreme medical director, the supreme secretary shall so notify the secretary of the subordinate lodge to which the member belonged, and shall record the member as in good standing upon the books of the supreme lodge.

"A suspended member shall furnish a new medical examination, if the same is required by the supreme medical director. No suspended member shall under any circumstances be reinstated or entitled to participate in the funds of the death benefit department until his application for reinstatement has been approved by the supreme medical director. Any member who fails to reinstate himself within ninety (90) days from the date of his suspension, shall make a new application, be re-examined, and if accepted, shall have a new certificate issued. No certificate that has been suspended for ninety days can be revived."

This law relates to and controls the manner of suspension of *members* for failure to pay an assessment. Laws 50, 51, and 111 relate to the sus-

pension of a subordinate *lodge* for failure to forward an assessment to the supreme lodge. When a lodge has been suspended it must comply with law 51, and be reinstated within thirty days next succeeding such suspension. When a member is suspended he must comply with law 49, and make application for reinstatement within ninety days from the date of his suspension. The suspension of Greenville lodge No. 55 did not, under the by-laws of the association, suspend the members thereof.

Appellant complains of the ninth finding of fact by the trial court, which reads: "I find that the nine members each made application for restoration according to the request of the supreme secretary, and were reinstated; that is to say, their applications were received and approved, for in my opinion they had not been individually suspended and were not required to make the applications."

The objection to this finding is that Greenville lodge No. 55, having failed to remit the amount of the assessment due the supreme lodge, was suspended, thereby suspending each member thereof, and deprived them of the benefits of the death benefit fund until such lodge should be reinstated.

The objection to this finding is disposed of in what we have said in discussing the first assignment. The suspension of Greenville lodge, as a lodge, did not have the effect of suspending the members. It is true, as before stated, if Greenville lodge was properly suspended by the terms of law 111, the members thereof could not participate in the death benefit fund during such suspension. Supreme Lodge v. Abbott, 82 Ind., 1.

Appellant also complains of the following finding: "I find that after this Greenville lodge No. 55 continued to exist and was recognized and treated by defendant as a lodge, as before, although it did not pay ten cents per head for each member as a penalty, as prescribed in law 51, but did pay the assessment No. 7. I find that defendant regularly levied upon the membership of Greenville lodge No. 55, after the suspension, as claimed, assessments Nos. 8, 9, 10, 11, and 12, series of 1894; that these assessments were duly collected by the subordinate officers of said lodge, and remitted to and received by defendant. I find that L. C. Turner paid all assessments levied against him up to the time of his death, and that he was a member in good standing at such time, and that Greenville lodge No. 55 was in good and regular standing at such time, and was so treated and recognized long after the death of said Turner."

Assessment No. 7, series of 1894, should have been received by the supreme secretary on or before August 22, 1894. It was not received until August 25, 1894. On the same day the supreme secretary wrote the secretary of Greenville lodge that inasmuch as the report was not received until after the suspension of the lodge, it would be necessary for Greenville lodge to comply with rule 51, and remit to the office of the supreme secretary the fine of ten cents for each member as required therein. This he says would amount to $1.10. Pending the receipt of · such remittance, your report and remittance for assessment No. 7 will be held subject to your order. Should your members prefer to comply with

the provisions of my previous letter of the 24th instant, and have their membership transferred to any of the Kansas City lodges pending a reorganization of your lodge, they may do so. The fine called for of ten cents for each member was never forwarded by Greenville lodge. On September 20, 1894, the supreme secretary wrote to the secretary of Greenville lodge acknowledging receipt of assessment No. 8, series 1894. And again on October 22, 1894, he wrote said secretary of Greenville lodge acknowledging receipt of assessment No. 9. On November 3, 1894, he in the same manner acknowledged receipt of assessment No. 10. On November 26, 1894, the supreme secretary and treasurer issued a receipt to Greenville lodge for $6.70 to J. F. Pruitt, acting secretary, "account assessment of Greenville lodge No. 55, assessment No. 10, $3.35; assessment No. 11, $3.35." These letters were addressed to the secretary of Greenville lodge in his official capacity, and signed by the supreme secretary and treasurer in his official capacity, and the receipt is for assessments against Greenville lodge No. 55; and we think clearly authorize the above finding of the trial judge.

Appellant's fourth assignment complains of the following finding of the trial judge: "I find that the supreme secretary of defendant claimed after this suit was filed that Greenville lodge No. 55, as a lodge, had not been reinstated, but the members each having made application for reinstatement, and Greenville lodge having been reorganized, they became members of the lodge as reorganized. I find that this is but a play upon words, as it would be immaterial whether Greenville lodge was reinstated as such or was reorganized; the material questions are, and I so find, that the lodge was in good and regular standing at the time of Turner's death, and that he was a member thereof in good and regular standing, and entitled to all the benefits as such."

The supreme officers upon the failure of Greenville lodge No. 55 to remit assessment No. 7 to the office of the supreme secretary within the time required in by-law No. 51, required each of the members of said Greenville lodge to make an application for reinstatement, upon the theory that they had each been individually suspended. Nine members did fill out applications furnished by the supreme secretary and forwarded the same to the supreme secretary, and said applications were approved by the supreme medical director. We have above held that the failure of the Greenville lodge to remit assessment No. 7 to the supreme secretary within the time required by the by-laws did not suspend the members individually, and this being so; the officers of the supreme lodge were without authority to require a new application from the individual members of Greenville lodge as a condition precedent to the reinstatement of said lodge or its members. Such a requirement being without authority, any statement or promise contained in such application was a nudum pactum, and not binding upon the applicant. Davidson v. Benefit Society, 39 Minn., 303; McDonald v. Chosen Friends, 78 Cal., 49; Niblack on Ben. Soc., sec. 293.

The supreme lodge having retained assessment No. 7, and afterwards called for and received assessments Nos. 8, 9, 10, 11, and 12, series 1894, and treated and recognized Greenville lodge No. 55 as a lodge, waived its right to insist that said lodge had been suspended by its failure to pay the fine of ten cents for each member growing out of the failure to remit assessment No. 7 within the time prescribed by the by-laws.

It was within the authority of the association, acting through the officers of the supreme lodge, to waive by-law 51 suspending Greenville lodge No. 55 for its failure to have assessment No. 7, series of 1894, at the office of the supreme secretary on or before August 22, 1894; or if suspended, to waive the payment of ten cents for each member fixed by said law as a penalty against said lodge, to be paid before its reinstatement. Spawn v. Chew, 60 Texas, 532; Insurance Co. v. Keyser, 32 N. H., 313; 64 Am. Dec., 377; 1 Joyce on Ins., secs. 394, 397.

When the association has knowledge that a cause of forfeiture exists and fails to take advantage thereof, but proceeds to levy and collect assessments from a subordinate lodge, and the members pay the same believing that the forfeiture is not to be enforced, the association after loss is estopped from setting up such cause of forfeiture to defeat a recovery. Insurance Co. v. Hanna, 81 Texas, 487; Insurance Co. v. Raddin, 120 U. S., 183; Niblack on Ben. Soc., sec. 300; Association v. Beck, 77 Ind., 203; Schwarzbach v. Pro. Union, 25 W. Va., 666.

The supreme lodge having continued to recognize Greenville lodge as a lodge for nearly six months, and having demanded and collected assessments from it and its members during such time, is estopped from denying that Greenville lodge and L. C. Turner were in good standing at the time of Turner's death.

The evidence was sufficient to support the finding that L. C. Turner did not die from the excessive use of intoxicants, and hence we overrule appellant's fifth assignment of error.

We do not think there is error in the court's conclusions of law, as complained of in appellant's sixth assignment of error.

One of the conclusions of law complained of under this assignment reads: "Should it be held, however, that L. C. Turner in August, 1894, under the contract was required to make formal application for reinstatement, yet under law 49 he was, as a matter of contract and right, entitled to such if he was then 'living and in good health,' and defendant could not, by requiring written application to be made on blanks furnished by defendant, impose any other conditions, and any such would be a mere nudum pactum."

L. C. Turner died in 1895 from valvular heart trouble. There is evidence in the record from which it can be fairly inferred that the immediate sickness from which the death of L. C. Turner resulted was not of long standing. The evidence fairly shows that Turner was alive and in good health within the meaning of law 49 in the months of August and September, 1894. Such being the condition of the record, he was en-

titled to be reinstated under law 49 of defendant association, even had he been properly suspended. Lovick v. Association, 110 N. C., 93.

We find no error in the record, and the judgment of the court below is affirmed.

*Affirmed.*