**MUNICIPAL PAVING CO. v. DONOVAN CO.**

(Court of Civil Appeals of Texas. Dallas. Dec. 23, 1911. Rehearing Denied Jan. 13, 1912.)

1. MUNICIPAL CORPORATIONS (§ 703*)—USE OF STREETS—REGULATION—STEAM ENGINES.

Under Dallas City Charter, c. 2, conferring on the city power to control and regulate the location and use of steam engines for the public safety, and giving the council exclusive control over the streets, etc., with the right to abate and remove obstructions, the city had power to adopt an ordinance making it unlawful to operate any steam engine over the streets, except on a railroad track, and on special permit secured from the mayor.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 703.*]

2. MUNICIPAL CORPORATIONS (§ 703*)—POLICE POWER—USE OF STREETS.

A city ordinance prohibiting the operation of steam engines over the streets except on permit issued by the mayor was a proper exercise of police power.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1509–1513; Dec. Dig. § 703.*]

3. MUNICIPAL CORPORATIONS (§ 703*)—USE OF STREETS—STEAM ROLLERS—DISCRIMINATION—REASONABLENESS.

A city ordinance making it unlawful to operate or move any steam engine over the streets except on tracks and on special permit from the mayor, designating the streets over which the same may be transported, applied alike to all persons engaged in the operation of steam rollers, engines, etc., and was neither discriminatory nor unreasonable.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1509–1513; Dec. Dig. § 703.*]

4. MUNICIPAL CORPORATIONS (§ 703*)—USE OF STREETS—PERMIT BY MAYOR.

A city ordinance prohibiting the operation of steam engines on the streets without a permit from the mayor, designating the streets

over which the engine may be transported, was not invalid as giving absolute power to the mayor to arbitrarily and oppressively refuse to issue a permit, he being required to exercise his discretion in the enforcement of the ordinance for the benefit of the general public.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 703.*]

**5. MUNICIPAL CORPORATIONS (§ 703*)—USE OF STREETS—ORDINANCE—CONSTRUCTION— "ENGINE."**

A city ordinance prohibited a movement of any engine propelled by steam over any street, except on tracks, but that the section should not apply to any engine used by any contractor engaged in street work, provided the consent of the mayor was first obtained to the use of the engine. *Held,* that a contractor's steam roller was an engine within the meaning of such ordinance, and that it was not to be construed as limited to requiring the mayor's consent only in case of a steam engine operated or moved on railway tracks provided for such purpose.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 703.*

For other definitions, see Words and Phrases, vol. 3, p. 2395.]

**6. EVIDENCE (§ 113*)—VALUE.**

In an action for the loss of plaintiff's horse which became frightened by the negligent operation of a steam roller on a city street, defendant's evidence that eight months before the action plaintiff paid $175 for the horse, and in the same summer in which the horse was injured offered to sell it for $200, was inadmissible to show its market value when killed.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 259–296; Dec. Dig. § 113.*]

**7. APPEAL AND ERROR (§ 1057*)— EVIDENCE —EXCLUSION—PREJUDICE.**

Where, in an action for loss of a horse, there was no assignment of error that the verdict was excessive, and the undisputed evidence would have justified a larger verdict, defendant was not prejudiced by the exclusion of evidence which solely referred to the value of the horse.

[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. § 1057.*]

**8. MUNICIPAL CORPORATIONS (§ 706*) — FRIGHTENING ANIMALS—USE OF STREETS— STEAM ROLLERS—INSTRUCTIONS.**

Where plaintiff's horse became frightened at defendant's steam roller on the street, and received injuries making it necessary to kill him, an instruction that it was defendant's duty to operate the roller with reasonably safe conduct and management, and in accordance with the provisions of the city ordinances, was not objectionable as placing on defendant the burden of proving that it had a permit issued by the mayor of the city authorizing the operation of the roller over the street, in accordance with the city's ordinances.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 706.*]

**9. TRIAL (§ 253*)—INSTRUCTIONS—REQUISITES.**

An instruction grouping the facts authorizing a verdict for plaintiff, and telling the jury that, if they found such facts, to find for plaintiff, was not objectionable because it did not require that the jury should find that plaintiff was not guilty of contributory negligence; such question being wholly covered in another instruction.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 613–623; Dec. Dig. § 253.*]

Appeal from District Court, Dallas County; E. B. Muse, Judge.

Action by the Donovan Company against the Municipal Paving Company. Judgment for plaintiff, and defendant appeals. Affirmed.

L. L. Albright and J. J. Eckford, for appellant. Harry P. Lawther, for appellee.

TALBOT, J. This suit was instituted by the Donovan Company, a private corporation, against the Municipal Paving Company, a private corporation, to recover damages in the sum of $750 for injuries to appellee's horse and buggy. Upon a trial before the court and a jury plaintiff recovered judgment for the sum of $433.95, with interest thereon at the rate of 6 per cent. per annum from August 20, 1907, and the defendant appealed. The petition alleged, in substance, and the evidence was sufficient to establish, the following facts: The Donovan Company were undertakers in the city of Dallas. August 20, 1907, Pat Donovan, the manager, in an undertaker's buggy, was proceeding east on Elm street to the Union Depot to receive a body from Terrell. Between Preston street and the Houston & Texas Central Railroad tracks a steam roller belonging to appellant and being driven and in charge of Frank J. Brown, an employé of the company, and a son of F. O. Brown, its president, was proceeding west on Elm street. Donovan was driving a young horse six years old, weighing about 1,200 pounds, sound and city broke. The vehicle was what was known as an undertaker's "first call" buggy, whose market value at the time was $310. Donovan was on the south and right-hand side of the street. There was a double street car track on Elm street, and the steam roller was coming straddle the north rail of the north track. The roller made quite a noise, and its appearance and the noise was calculated to frighten horses, and, when within about 50 feet of the steam roller, the horse, frightened at the appearance, noise, and approach thereof, began to cut up. Donovan did what he could to control the horse, and waved his hand and halloaed at the man upon the steam roller to stop. Immediately in front of Donovan was a man with a horse and wagon, and that horse, also frightened at the steam roller, was backing the wagon into Donovan's horse. The man driving the steam roller (Frank Brown), although facing west and looking directly at Donovan (so the latter testified), did not stop the roller, nor even slacken its speed, and, the same coming on, Donovan's horse became unmanageable, shied, wheeled, turned over the buggy, and ran away, dragging Donovan on the street under the buggy. The horse ran onto the sidewalk and against a telephone post at the corner of Elm street and the Houston & Texas Central

Railroad, demolishing the buggy and breaking its leg. The horse was caught and led back to a livery stable at Preston and Elm streets, where, upon being examined by Dr. Warner, a veterinary, it was, upon his advice and direction, shot. The appellee's driver in charge of the horse and buggy was not guilty of negligence contributing to the accident and damage sustained by appellee, and the verdict is not excessive. At the time of the accident there was in force in the city of Dallas the following ordinance:

"An ordinance prohibiting the operation and movement of steam engines in the city of Dallas otherwise than on railroad tracks.

"Be it ordained by the city council of the city of Dallas:

"Section 1. That it shall hereafter be unlawful for any one to operate or move in any manner any engine propelled by steam power over any street, avenue, alley or highway of the city of Dallas, except the same is operated or moved on a railway track provided for such purpose.

"Sec. 2. That in the event it shall be necessary to move any steam engine over any street or highway of the city of Dallas for the purpose of transporting same from the seller to the purchaser, the same may be done upon a special permit in writing secured from the mayor, designating the streets over which same may be transported. The provisions of section 1 shall not apply to any engine used by any contractor engaged in constructing, paving or repairing streets, or on public works, provided the consent of the mayor is first obtained to the use of such engine.

"Sec. 3. That any one violating this ordinance shall be subject to a fine of not less than ten dollars and not more than two hundred dollars.

"Passed: April 27th, 1903. Correctly enrolled, May 15th, 1903. C. G. Morgan, Finance and Revenue Committee.

"Approved May 18, 1903, Ben. E. Cabell, Mayor.

"Attest: I. A. Moore, City Secretary."

The first and second assignments of error complain of the trial court's action in overruling defendant's special exceptions Nos. 1 and 2 to plaintiff's petition. The propositions contended for under these assignments are: (1) "The terms of the ordinance denying to a contractor using an engine in repairing a street, the entire use of a public street without the consent of a person who at the time may be mayor of the city, and prescribing no conditions which such contractor may comply with in order to entitle him to the use of the street or such person's consent, but compelling him to be subject to the arbitrary will of a person, is the delegation of the legislative power to a body not contemplated or recognized by law, and is unconstitutional, null, and void." (2) That such an ordinance

is an unreasonable limitation and denial of a citizen's inalienable right to the use of a public highway, and is therefore null and void.

[1] We are of the opinion the ordinance is within the express powers granted in the charter of the city of Dallas, and is not unreasonable and void. The charter of said city confers upon its governing body, among others, the following powers, namely: (1) "To control and regulate the location and use of steam engines in the city, and prescribe the qualifications of persons operating and running the same, and to adopt such rules and regulations in relation thereto as may seem best for the public safety and comfort." (2) "The city council shall have exclusive control and power over the streets, alleys, crossings, highways, and public grounds in the city, and to abate and remove all encroachments or obstructions thereon, to open, alter, abolish, widen, extend, establish, regulate, grade, pave, clean, or otherwise improve said streets and to protect the same from all encroachments and injury of any kind whatsoever."

[2] The passage and adoption of the ordinance in question under the powers here conferred was but the legitimate exercise of the police power of the state over the subject to which it relates. That the Legislature, or its delegated agents, in the exercise of this power, may prescribe regulations for the comfort and safety of the public, which do not violate any of the provisions of the organic law, cannot be questioned; and it has been repeatedly held that laws and regulations necessary for the welfare of the community, though they may disturb the enjoyment of individual rights, are not unconstitutional.

[3] The ordinance in question is not discriminatory by its provisions. All persons engaged in the operation of a steam roller are treated alike. They are subject to the same restrictions and entitled to the same privileges under similar circumstances. The ordinance is indeed a wise precaution in a populous city like Dallas for the safety of the public. That a highway should be regarded as open to the public and to all ordinary uses is not denied, but the propelling of a roller, such as the one in question, by steam, in and through a street of a city, is not an ordinary use of the street. Such a roller is clearly calculated to frighten horses being driven along the street and thereby endanger the lives of the citizens, and a restricted use of the same is not only proper, but necessary.

[4] We do not think the ordinance should be held void because it requires one desiring to operate a steam roller on the streets of the city to obtain the consent of the mayor. It will not be presumed that the mayor will use the discretion thus vested in him arbitrarily or oppressively, and the undisputed evidence in this case shows no such use was

made of it with respect to the defendant. On the contrary, it appears by the testimony of the defendant's president, F. O. Brown, and without contradiction, that after this suit was filed his company obtained, and had at the time of the trial, a permit from the mayor to move the steam roller in question over and along any street in the city. Nor should the ordinance be considered, we think, as conferring, or intending to confer, on the mayor a mere arbitrary power to give or withhold his consent to the use of a steam roller on the streets of the city, not only as to places, but also as to persons. Such discretion was evidently given in the legal sense of that term to be exercised fairly and without any invidious discrimination against any one, with a view to the protection of public against the danger incident to the operation of such a roller along a public thoroughfare. The cases of Yick Wo v. Hopkins, 118 U. S. 356, 6 Sup. Ct. 1064, 30 L. Ed. 220, and City of Baltimore v. Radecke, 49 Md. 217, 33 Am. Rep. 239, cited by appellant in support of its contention, are distinguishable in their facts from the instant case, and do not therefore control its decision. What has been said also disposes of appellant's assignments of error complaining of the admission in evidence of the ordinance in question and of the court's charge in reference thereto, and said assignments need not be discussed in detail.

[5] In the first paragraph of the court's charge the jury were instructed that it was the duty of the defendant to operate its steam roller on and over Elm street in the city of Dallas in accordance with the provisions of the city ordinance discussed in disposing of the first and second assignments. This portion of the charge is complained of in the sixth assignment of error, and the proposition urged is that "the evidence shows that the steam roller appellant was moving down Elm street was not a steam engine operated or moved on railway tracks provided for such purposes, and such an engine was the only kind of engine that a contractor repairing streets was required to obtain the consent of the mayor to use. In this construction of the ordinance we do not concur. The roller in question was propelled by steam, and clearly an engine within the contemplation and meaning of the ordinance. This is manifest from the proviso of the ordinance which declares that section 1 thereof, which prohibits the operation of any engine propelled by steam over any street of the city except upon railway tracks provided for the purpose, shall not apply to engines used by any contractor engaged in constructing, paving, or repairing streets, etc., provided the consent of the mayor is first obtained, to the use of such engine. In harmony with this view, it has been held that a statutory provision prohibiting the use of any street by any engine propelled by steam without sending a person in advance to give warning is applica-

ble to a steam road roller. Buchanan & Sons v. Cranford Co., 112 App. Div. 278, 98 N. Y. Supp. 378; Mullen v. Glens Falls, 11 App. Div. 275, 42 N. Y. Supp. 113. It appears without dispute that the steam roller which was being operated by appellant at the time and place of the accident resulting in the injury to plaintiff's horse and buggy was such as is commonly used in constructing, paving, and repairing streets, etc., and there is no pretense that the use then being made of it came within any of the exceptions of the ordinance, or that it was being used with the consent of the mayor.

[6] Complaint is made of the court's refusal to permit the defendant to prove that eight months before the accident plaintiff paid $175 for the horse, and that during the summer of 1907 the horse injured was offered to its witness, Tom Angus, for the sum of $200. There was no error in excluding this testimony. The measure of damages for the loss of the horse was its market value at the time and place it was killed; and evidence of what the plaintiff paid for the horse eight months prior thereto or what the horse had been offered to Tom Angus for was inadmissible and properly excluded.

[7] But, if it should be conceded that the testimony was competent as tending to show the value of the horse at the time it was killed and in rebuttal of other testimony offered showing a greater value, still its exclusion should not operate to reverse the case. This is for the reason that the testimony bore solely upon the amount of the damages sustained by the plaintiff, and it is not assigned that the verdict is excessive, and because the undisputed evidence would have justified a larger verdict, and it is manifest that had the testimony excluded been admitted it is not at all probable a verdict for a less amount would have been rendered. Therefore no injury resulted to appellant from its exclusion.

[8] The court instructed the jury in the first paragraph of the general charge that it was the duty of the defendant to operate its steam roller on and over Elm street in the city of Dallas with reasonably safe conduct and management, and in accordance with the provisions of the city ordinances of the city of Dallas. This charge is objected to on the ground that it placed the burden of proof on appellant to show that it had the consent of the mayor to run its steam roller on Elm street, whereas the burden was upon appellee to show that it did not have such consent. That it was appellant's duty to operate its steam roller on Elm street in the manner charged can hardly be questioned, and to so tell the jury did not place upon the appellant the burden of showing that it had performed that duty. In the case at bar, as in every case of actionable negligence, the burden was upon the plaintiff to show a failure on the part of the defendant to comply with the

legal duty resting upon it, and the court so charged the jury in this case. In the court's general charge the jury were instructed: "The burden of proof is on the plaintiff to establish his case by a preponderance of the evidence." And at the request of appellant they were further charged as follows: "You are instructed that the driver of a horse or of a vehicle propelled by a horse has no higher or prior right to occupy the public thoroughfare than any other lawful user of said thoroughfare, and the mere fact that a horse became frightened at a steam roller does not in itself establish negligence on the part of the defendant, but negligence of the defendant is a fact to be proven as any other fact, and the burden of establishing negligence on the part of the defendant in this case is upon the plaintiff, and, although you may find that the plaintiff's horse took fright at said steam roller, before you can find against the defendant in favor of plaintiff for damages, you must further find that the injuries complained of were not due to negligence on the part of plaintiff, but that the same was due to some negligent act of the defendant or its agents or employés that directly caused said injury." Again, the testimony conclusively established that the appellant did not before and at the time of the accident have a permit or the consent of the mayor to operate its steam roller on and along Elm street.

Nor did the court err in its charge to the jury on the measure of damages as claimed in appellant's fourteenth assignment of error. The court's charge clearly left it to the jury to determine from the evidence whether or not the horse's leg was broken on the occasion in question as a result of the defendant's negligence, and instructed them that, if it was not, to find for the defendant. The charge did not in our opinion invade the province of the jury, in that it assumed as an undisputed fact that the horse was injured on the occasion of the accident as a result of appellant's negligence.

[9] Appellant's eighteenth assignment complains that the court "erred in the second paragraph of its charge to the jury, wherein it instructed the jury to find against the defendant if it was negligent, and did not qualify same by instructing them to so find unless they found for the defendant on its plea of contributory negligence." The failure to so qualify the charge was not error. In the paragraph here complained of the court grouped the facts authorizing a verdict in favor of the plaintiff, and told the jury that in the event they found said facts to exist to find for the plaintiff, leaving the issue of contributory negligence to be presented in another and separate paragraph of the charge. This, we think, was proper. It has been frequently held that the plaintiff was entitled to such a charge unincumbered with the defensive plea of contributory negligence; that the submission of such a defense could properly be reserved for a separate and distinct paragraph of the charge. This was done in the present case, and that issue fairly submitted for the determination of the jury. They were told that, if the running away of the horse was occasioned or was contributed to by the carelessness of Donovan (the driver), to find for the defendant. And again, at the instance of the defendant, they were instructed: "Before you can find against the defendant in favor of plaintiff for damages, you must further find that the injuries complained of were not due to negligence on the part of the plaintiff, but that the same were due to some negligent act of the defendant, or its agent, or employé that directly caused said injuries."

Assignments of error not discussed have been carefully examined, and because we think they point out no reversible error they are overruled.

The judgment is affirmed.