# BROTHERHOOD OF RAILROAD TRAINMEN v. COOK. (No. 1638.)

(Court of Civil Appeals of Texas. Amarillo. Jan. 14, 1920. On the Merits, April 7, 1920. Rehearing Denied May 5, 1920.)

**1. Associations ☞1—Voluntary unincorporated association not regarded as person or entity in absence of statute.**

In the absence of legislation, a voluntary unincorporated association is not regarded by the law as a person or entity, and where such associations engage in business enterprise, the liability of the members to third persons is similar to the liability of partners, and enforceable in the same manner as the partnership liability.

**2. Associations ☞1—Unincorporated association an entity in view of statute.**

Rev. St. arts. 6149–6154, held to constitute an unincorporated association an entity, at least for the purpose of litigation.

**3. Appeal and error ☞387(3)—Association with headquarters out of county not required to file bond within time specified, where appellant resides within county.**

An unincorporated association not having its headquarters in county in which it was sued was not required to file appeal bond within 20 days after notice of appeal under Rev. St. art. 2084, requiring bond to be so filed when appellant resides in the county, since such association is an entity in view of articles 6149–6154, and as such has its residence at the place of the general headquarters of the governing officers and body.

## On the Merits.

**4. Insurance ☞762—Insurance held effective without delivery of certificate.**

Where application for readmission and for insurance were accepted by fraternal society, and where applicant was accepted as a member and paid the money entitling him to issuance of the beneficiary certificate, the insurance went into effect upon his admission and payment of the dues for the current month, notwithstanding that certificate itself had not been issued or delivered, in absence of anything in the constitution or application for readmission or for insurance making the delivery of the certificate a condition to the taking effect of insurance, since such insurance contract is not required to be in writing.

**5. Insurance ☞762—Local lodge and officers agents of grand lodge in reception and readmission of members.**

The order of which the grand lodge and its officers are the controlling body acts through the local lodge and its officers in the matter of the reception and readmission of members; the local lodge and its officers being the agents of the grand lodge in such matters.

**6. Principal and agent ☞101(1)—Agent may waive strict compliance with contract in dealing with party who has no knowledge of limitation of power.**

Generally an agent may waive a strict compliance of the terms of a contract in respect

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

to those matters in which he is acting for the principal, provided the other party has no knowledge of any limitation of his power in such matter.

**7. Insurance ⬥⟳762—Applicant for membership entitled to rely on regularity of proceedings.**

Since applicant for readmission to membership is to a large extent dependent upon the officers of the lodge and the members thereof who are inducting him into the order for instructions as to what is necessary to be done in such matters, he has a right to rely on the fact that proceedings to which he submits himself are regular and in compliance with the order.

**8. Insurance ⬥⟳762—Applicant for readmission may accept construction of constitution by subordinate lodge readmitting him.**

Applicant for readmission could rely upon the construction placed on an ambiguous provision of constitution by the subordinate lodge and officers thereof under whose direction he was proceeding in gaining readmission to grand lodge.

**·9. Insurance ⬥⟳763—Applicant's signature to constitution of fraternal society as prerequisite to membership held waived.**

Where applicant for readmission had submitted to the required medical examination, had been accepted and recognized as a member and elected as such by the subordinate lodge, and had paid subordinate lodge treasurer the necessary dues, his failure to sign the constitution, even though the signing thereof was required by the constitution as a prerequisite to membership, did not preclude him from becoming a member and recovering insurance where he had no knowledge of such requirement, and where subordinate lodge did not require him to sign constitution; such requirement under the circumstances being waived, in view of Vernon's Sayles' Ann. Civ. St. 1914, arts. 4847, 4855.

Appeal from District Court, Dallas County; W. F. Whitehurst, Judge.

Action by A. F. Cook against the Brotherhood of Railroad Trainmen. Judgment for plaintiff, and defendant appeals. Affirmed.

Wm. H. Atwell, of Dallas, for appellant. M. M. Plowman, of Dallas, for appellee.

On Motion to Dismiss.

BOYCE, J. The appellee, A. F. Cook, recovered judgment in the district court of Dallas county against the appellant, Brotherhood of Railroad Trainmen, and said defendant has prosecuted this appeal. The appellee now moves that the appeal be dismissed because the appeal bond was not filed within the time required by law.

The facts necessary to a decision of this motion are: The appellant, Brotherhood of Railroad Trainmen, is an unincorporated voluntary association of trainmen having an extensive membership throughout the United States, and affords its members insurance against accidents, etc. The organization consists of a grand lodge and such subordinate lodges as are chartered by the grand lodge. It is provided by the constitution that the headquarters of the grand lodge shall be located at Cleveland, Ohio. The officers of the grand lodge have their offices at such place, and the general business of the association is transacted through such officers. There was a subordinate lodge of the Brotherhood located at Dallas, which had president, secretary, treasurer, etc. The term of court at which the judgment was rendered could, according to law, and as a matter of fact did at this particuar term, continue in sesssion for more than 8° weeks. The appeal bond was filed by appellant more than 20 and less than 30 days after the overruling of the ·motion for new trial and notice of appeal.

Article 2084 of the Revised Statutes· requires as to the filing of an appeal bond in such case that—

"If the term of the court may by law continue more than eight weeks, the bond or affidavit in lieu thereof shall be filed within twenty days after notice of appeal is given, if the party taking the appeal resides in the county, and within thirty days if he resides out of the county."

[1] What, then, is the status of the defendant association, and where is its residence, if it can be said to have a residence? In the absence of legislation, a voluntary association of this character is not regarded by the law as a person or entity. Burton v. Grand Rapids Furniture Co., 10 Tex. Civ. App. 270, 31 S. W. 91; Slaughter v. American Baptist Publishing Society, 150 S. W. 226; Home Benefit Association v. Wester, 146 S. W. 1022; C. J. vol. 5, p. 1334. Where such associations engage in business enterprises, the liability of the members thereof to third persons is similar to the liability of partners, and such liability could be enforced in the same manner as a partnership liability. But such associations were not strictly partnerships in fact; the law only applying some of the features of the partnership law to them. In some respects they were like corporations. Industrial Lumber Co. v. Texas Pine Land Association, 31 Tex. Civ. App. 375, 72 S. W. 878; Liederkranz Singing Society v. Germania Turn-Verein, 163 Pa. 265, 29 Atl. 918, 43 Am. St. Rep. 798; Ostrom v. Greene, 161 N. Y. 353, 55 N. E. 922. In the Pennsylvania case referred to the court said that a voluntary association of this character occupies an intermediate position between a partnership and a corporation. The Court of Appeals of New York, in the case of Ostrom v. Greene, supra, after making the statement that a voluntary association is neither a partnership nor a corporation, says:

---

⬥⟳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

"In order to pass upon its rights and powers, as well as those of its members, 'both the law of corporations and the law of copartnerships are to be resorted to in the absence of statutory regulations; the choice being determined by the nature of the feature under consideration.' "

In that case it was intimated that the right to sue and be sued in the name of its president, conferred by the statute of New York on voluntary associations, "may be of a corporate nature."

In 1907 the Legislature enacted a law (R. S. arts. 6149–6154) which provides that—

An unincorporated association "may sue or be sued in any court of this state having jurisdiction of the subject-matter in its company or distinguishing name; and it shall not be necessary to make the individual stockholders or members thereof parties to the suit."

[2] The law contains other provisions which it is not necessary for us to refer to in this discussion. We think the effect of this law was, at least for the purposes of the litigation, to constitute the association an entity. Judge Brown, in the case of Frank v. Tatum, 87 Tex. 204, 25 S. W. 409, after referring to the statutes of several states which authorize suits to be brought by or against copartnerships in their firm names, says:

"The effect of such statutes is to give to the partnership recognition as 'an entity or distinct legal person, distinct from its members.' "

[3] If the association, for the purposes of the suit, is to be regarded as an entity, so that it could be sued by name, then it was contemplated that it should have a residence somewhere. The law in reference to the appeal bond, which we have quoted, makes provision only for a defendant who either resides in the county of the suit or out of it; there being no provision for appeal by a defendant without a residence. Under the circumstances we think that the residence of the association is to be determined like that of a corporation. In this event its residence would be at the place of the general headquarters of the governing officers and body—in this instance Cleveland, Ohio.

These conclusions result in our holding that the appeal bond was filed within time, and that the motion to dismiss the appeal should be overruled.

### On the Merits.

We make the following general statement of the case, in addition to the preliminary statement made in the opinion heretofore rendered, disposing of the motion to dismiss the appeal. Plaintiff's recovery was founded on the claim that he was a member of the appellant organization and was insured there-in; that while so insured he suffered an accident resulting in the loss of an arm and was entitled to recover the sum of $1,600 on his contract of insurance. The defense urged by the appellant was that no beneficiary certificate had been issued by it to the plaintiff, and that he had not become a member of the order at the time of the accident so as to entitle him to the benefits incident to such membership; that the constitution of the Brotherhood required one seeking admission to sign the constitution as a prerequisite to membership, and the plaintiff had not done this. The appellee's reply to this contention was that, if the signing of the constitution was necessary, this condition had been waived by the appellant. A more detailed statement of the facts which present the basis of the respective claims of the parties is necessary for a further consideration of the questions thus presented.

The appellee had been a member of the Beaumont Lodge of the Brotherhood, and was expelled for nonpayment of dues. When he went to work as a trainman at Dallas, he made application for admission to the Brotherhood through the subordinate lodge at Dallas. To effect such readmission, he signed, under the direction of the treasurer of the Dallas Lodge, an application for readmission and also an application for a beneficiary certificate of insurance. The application for admission to membership contained this provision:

"If admitted, I promise a strict compliance with all the laws, rules, and regulations of the Brotherhood."

Appellee also submitted to the required medical examination and paid the physician's fee of $1, and also paid what is termed the "proposition fee" of $1, which was necessary upon presenting his application for readmission into the Brotherhood. These applications were delivered to the secretary of the local lodge at Dallas and sent by him to the secretary of the grand lodge at Cleveland, Ohio, and were approved, and the local lodge duly notified of such approval; whereupon, on the 23d day of August, 1917, the local lodge voted upon the application for membership, and appellee was elected a member. There is no question as to the regularity of any of the proceedings up to this point. When appellee was first notified of his election, he did not then have the money to pay the dues required upon admission, but informed the treasurer that he would pay such dues so as to become a member, beginning with September 1st. On September 1st he offered to pay the dues to the treasurer of the local lodge, but they were not then accepted, because the treasurer was too busy to attend to the matter, but on Sunday, September 2d, the appellee did pay to the local treasurer the sum of $4.75, which was the amount that

would be due and payable by a regular member of the lodge for such month, and which amount included the charges against such a member carrying insurance in the class selected and designated by the appellee in his application. The treasurer gave the appellee a receipt for such payment and asked him to appear at the lodge room on the next day for the purpose of taking part, as a member of the lodge, in the Labor Day parade. The appellee did report at the lodge room, as requested, and was welcomed into the lodge by some of the members present, and took part in the parade as a member of the Brotherhood, wearing the insignia of the order supplied by the local lodge. Appellee did not sign the constitution. The evidence warranted the finding that the appellee did not know that it was necessary for him to sign the constitution in order to be readmitted to membership, and that no one informed him of such fact or suggested that he do so. In fact, the evidence would warrant the finding that the treasurer, with whom all of the transactions looking to appellee's readmission were had, did not himself understand that the signing of the constitution was a requirement to readmission. There is some other evidence which showed that in other ways the appellee was regarded and reported by the local lodge and its officers as having become a member thereof. The local treasurer, in accordance with the requirements of the order, made out a report, dated September 3d, of the readmission of the appellee to membership, and forwarded it, with money order for $4.25, the amount due the grand lodge by reason of such readmission, to the secretary of the grand lodge, requesting the issuance of a beneficiary certificate to the said A. F. Cook, in accordance with his application on file with the secretary. On the night of September 3d the appellee, while in the discharge of his duties, met with an accident which caused the loss of his arm, and which would entitle him to receive from the Brotherhood the sum of $1,600 if his insurance had become effective. On September 4th the local treasurer reported the accident to the secretary of the grand lodge. In this report the treasurer stated that remittance of the $4.25 due the grand lodge on the readmission of the member had only been made on that morning, because the intervention of Sunday and a legal holiday had prevented the remittance before. In this connection, however, he stated that the remittance had been made before he had been informed of the accident. After some correspondence, during the course of which the money order for $4.25 was sent back and forth between the grand secretary and the treasurer of the local lodge, and the grand secretary was informed that the appellee had not signed the constitution, the secretary of the grand lodge again returned the money order to the local treasurer, taking the position that the appellee had not become a member of the organization at the time of the accident because he had not signed the constitution, as required by its provisions. The following provisions of the constitution are claimed to be pertinent in the consideration of the question of the appellant's liability:

"Sec. 74. No claim shall be paid by the general secretary and treasurer unless the member to whom the certificate was issued was in good standing on the grand register at the time of his death or total and permanent disability occurred. And any failure of any officer or member of a subordinate lodge to keep him in good standing shall not render the grand lodge liable nor modify the rule above mentioned."

"Sec. 78. In all matters pertaining to the insurance or beneficiary department, neither the subordinate lodges nor the officers thereof shall ever act as agent or agents of the grand lodge, unless specially authorized in writing by the president of the grand lodge or the general secretary and treasurer for that purpose, and without such authority any and all actions which may be taken touching said matters by said subordinate lodge or the members thereof shall be absolutely void.

"Sec. 79. The constitution and general rules herein adopted and every section thereof shall be applied to and govern and control all beneficiary certificates heretofore issued in like manner and to the same extent as those hereafter issued."

"Sec. 122. A proposition for membership by a deposit of withdrawal or readmission card shall be treated the same as an application, as provided in section 125 of this constitution. * * * This lodge, in considering an application for membership by deposit of a readmission card, shall forward the readmission card to the general secretary and treasurer, and, if found to be correct, he shall stamp the card 'Approved,' and return the same to the secretary of the lodge to be placed on file. * * * In such case applicant shall become a member upon signing the constitution, and his membership shall date from the time he so attaches his name, and the ceremony of initiation shall be dispensed with."

"Sec. 125. No person shall receive any of the benefits of the Brotherhood nor acquire any rights in the insurance or beneficiary department nor be considered a member of the Brotherhood until he has been duly admitted and initiated and has signed the constitution, agreeing to support the same."

"Sec. 151. A member expelled for nonpayment of dues may be readmitted upon making application on a form provided by the grand secretary and treasurer for that purpose, the payment of all arrearage up to the date of the expulsion, current month's dues and a proposition fee of one dollar. * * * All such readmitted persons must again sign the constitution."

[4] There does not appear to be anything in the constitution or in the application for readmission or for insurance that makes the delivery of the beneficiary certificate a con-

dition to the taking effect of the insurance. Insurance contracts of this kind are not required to be in writing. If the applications for readmission and for insurance were accepted, and the plaintiff did become a member, and pay the money that would entitle him to have the beneficiary certificate issued, then we think the insurance went into effect upon his admission and payment of the dues for the current month, notwithstanding the beneficiary certificate itself had not been issued or delivered. Modern Woodmen v. Owens, 60 Tex. Civ. App. 398, 130 S. W. 862; Pledger v. W. O. W., 17 Tex. Civ. App. 18, 42 S. W. 654; State Mutual Fire Insurance Co. v. Taylor, 157 S. W. 952; Austin Fire Insurance Co. v. Brown, 160 S. W. 973; Pacific Mutual Insurance Co. v. Shaffer, 30 Tex. Civ. App. 313, 70 S. W. 566; Cohen v. Continental Fire Insurance Co., 67 Tex. 325, 3 S. W. 296, 60 Am. Rep. 24; Tayloe v. Merchants' Fire Insurance Co., 9 How. 390, 13 L. Ed. 187; Bacon's Benefit Societies and Life Insurance (3d Ed.) §§ 172, 173. So that the vital question in the case concerns the effect of the provisions of the constitution in reference to the signature thereto of an applicant for readmission and the failure of the appellee to sign such constitution under the conditions stated.

It is generally stated as the law that the constitution and by-laws of a mutual benefit association become a part of the contract between the member and the association, and that a member is conclusively presumed to know the provisions thereof. McWilliams v. Modern Woodmen, 142 S. W. 644; Haywood v. Grand Lodge of Texas, K. P., 138 S. W. 1196; Cooley's Briefs on the Law of Insurance, pp. 697, 698, and Supplement, §§ 697, 698. Assuming for the present that the appellee was bound to know the provisions of the constitution referred to, and that these provisions required his signature to the constitution as a condition precedent to the taking effect of the insurance applied for, yet, if the case be one to which we may apply the ordinary rules of agency, there would be little difficulty in its solution, for the reason that the facts stated would warrant the conclusion that compliance with such provision of the constitution had been waived. Order of Columbus v. Fuqua, 60 S. W. 1020; Sovereign Camp, W. O. W., v. Carrington, 41 Tex. Civ. App. 29, 90 S. W. 923; Grand Temple v. Johnson, 171 S. W. 490; Knights of Pythias v. Bridges, 15 Tex. Civ. App. 196, 39 S. W. 333; Supreme Lodge v. Turner, 19 Tex. Civ. App. 346, 47 S. W. 49; Mutual Reserve Fund v. Bozeman, 52 S. W. 94; Cooley's Briefs on the Law of Insurance, pp. 2494, 2495, and Supplement, §§ 2494, 2495; Richardson v. Brotherhood, 70 Wash. 76, 126 Pac. 82, 41 L. R. A. (N. S.) 320; Frank v. Switchmen's Union, 87 Wash. 634, 152 Pac. 514; Itzko-

witz v. Grand Lodge (Mun. Ct.) 161 N. Y. Supp. 837.

[5, 6] The order of which the grand lodge and its officers are the controlling body acts through the local lodge and its officers in the matter of the reception and readmission of members. Necessarily the local lodge and its officers are the agents of the Brotherhood in these matters, and it is the general rule of law that an agent may waive a strict compliance of the terms of a contract in respect to those matters in which he is acting for the principal, provided, of course, the other party has no knowledge of any limitation of his power in such matter. Section 78 of the constitution above quoted is the only express limitation of the agency of the subordinate lodge and its officers called to our attention; but by the constitution itself the local lodge does act in the matter of the induction of the members into the order, and section 78 contains no express limitation upon their authority in such matter. It may be answered that it must be presumed that in such matters the local lodge and its officers must act in accordance with the constitution, and the provisions of the constitution itself furnish the limits of the authority of both the officers of the grand lodge and the subordinate lodge as well. The application of this doctrine would result, of course, in the holding that neither the officers of the grand lodge nor the officers of the subordinate lodge have power to waive any of the provisions of the by-laws or constitution. This may be logically the most correct view of the matter, and there are some high authorities which support this position. Societa Unione F. Italiana v. Leyden, 225 Mass. 540, 114 N. E. 738, L. R. A. 1917C, 256. Mr. Bacon, in his work on Benefit Societies and Life Insurance, discusses in several paragraphs the distinction which some decisions make between the power of an agent of stock companies and of mutual companies and benefit societies, and only a brief reference to such discussion and some of the authorities referred to is sufficient to disclose the confusion and conflict which exists in such matter. Sections 153, 157, 434a, Bacon's Benefit Societies and Life Insurance. We have not the time, if we had the inclination, to attempt a review of the many authorities on this subject. The trend of authorities, however, seems to be to ignore any such distinction. This will appear from a reference to the authorities cited by Cooley referred to in the above citation, and particularly those referred to in the reference to the supplement. An examination of many of the Texas cases cited by us will show that recovery was upheld on the ground that compliance with some provision of the constitution or by-laws of the order had been waived by some officer or agent of the association. See the following cases: Order of Columbus

v. Fuqua, 60 S. W. 1020; Supreme Lodge v. Turner, 19 Tex. Civ. App. 346, 47 S. W. 49; Mutual Reserve Fund v. Bozeman, 21 Tex. Civ. App. 490, 52 S. W. 94; Sovereign Camp, W. O. W., v. Carrington, 41 Tex. Civ. App. 29, 90 S. W. 921. There are numerous authorities to the effect that the forms prescribed by the constitution and by-laws of an association for induction of a member therein may be waived. In the case of the Supreme Ruling of the Fraternal Mystic Circle v. Crawford, 32 Tex. Civ. App. 603, 75 S. W. 844, where the order treated the deceased as a member, accepted his assessments and dues, and delivered the beneficiary certificate, it was held that initiation was waived. In the case of Sovereign Camp, W. O. W., v. Jackson, 57 Okl. 318, 157 Pac. 92, L. R. A. 1916F, 166, the constitution of the order provided that there should be no liability for benefits until the member "shall have been obligated in due form." The local lodge recognized an applicant as a member, collected dues from him, and delivered to him the beneficiary certificate, which contained the same provision with reference to being "obligated" as was contained in the constitution, and it was held that the requirement of initiation was waived. In the case of Lakka v. Modern Brotherhood, 163 Iowa, 159, 143 N. W. 513, 49 L. R. A. (N. S.) 902, it was contended that some of the forms required by the by-laws of the Brotherhood had not been complied with in the initiation of the member, and that for this reason the Brotherhood was not liable for insurance upon his death, and the court answered this contention thus:

"To accede to this contention would be to permit the extensive ritualistic forms of the defendant to become the ready means of actual fraud upon prospective members, accepting solicitations to membership extended to them by appropriate officers, and paying to such officers the appropriate fees upon assurances of their complete adoption as members."

See, also, Bruner v. Brotherhood of Yeomen, 136 Iowa, 612, 111 N. W. 979; Wagner v. Supreme Lodge, 128 Mich. 660, 87 N. W. 903; Shartle v. Modern Brotherhood, 139 Mo. App. 433, 122 S. W. 1139; Richards v. Louis Lipp Co., 69 Ohio St. 359, 69 N. E. 616, 100 Am. St. Rep. 679; C. J. vol. 7, p. 1096; R. C. L. vol. 19, p. 1236. Vernon's Sayles' Ann. Civ. St. 1914, art. 4847, c. 7, dealing with fraternal benefit societies, provides:

"The constitution and laws of the society may provide that no subordinate body nor any of its subordinate officers or members shall have the power or authority to waive any of the provisions of the laws and constitution of the society, and the same shall be binding on the society and each and every member thereof and on all beneficiaries of members."

The appellant has no permit under the provisions of said chapter and it is claimed that it is not subject to the provisions of the insurance laws of the state by reason of the provisions of article 4855. We quote the article of the statute above merely for the purpose of showing that the Legislature participated in the view which seems to be generally entertained by the courts of this state that there might be a waiver of the provisions of the constitution and by-laws by the agents of the society the same as any other provision of an insurance contract in the absence of an express inhibition in the constitution and by-laws against such waiver.

There is a stronger reason for holding that there might be a waiver of the formalities provided by the constitution or by-laws in connection with the reception of a member into the order than applies in the case of waiver of nonconformity to such rules by the member after his reception into the order. An applicant for membership has no control of the initiatory proceedings except to submit himself to the direction of the officers and members having such matters in charge. There is nothing in the face of the application for the beneficiary certificate or for readmission that would notify the appellee that it was necessary for him to sign the constitution in order to become a member. The provision which he did sign reads:

"If admitted, I promise a strict compliance with all the laws, rules, and regulations of the Brotherhood."

[7] By its very terms it is applicable only after admission, and says nothing about a prerequisite to readmission. Since the applicant for membership is to a large extent dependent upon the officers of the lodge and the members thereof, who are inducting him into the order, for instructions as to what is necessary to be done in such matters, it might be reasonably concluded that the initiate has the right to rely on the fact that the proceedings to which he submits himself are regular and in compliance with the rules of the order. Our Supreme Court, in the case of Sovereign Camp, W. O. W., v. Fraley, 94 Tex. 200, 59 S. W. 882, 51 L. R. A. 898, held that, where the order assumed the duty of notifying a member entering it of a certain provision of its by-laws and did not do so, the member was not charged with notice thereof, and such provision did not become a part of his contract. It occurs to us that the general principle announced in this decision may be appropriately applied to the facts of this case.

[8] We have so far assumed that under a proper construction of the constitution the signature of the appellee to the constitution was a condition precedent to the taking effect of the readmission. Appellee contends that this is not the necessary construction to be placed upon the language of section 151 of the said constitution, under which special

provision the appellee was readmitted. There is much plausibility in this position. It will be seen that the section referred to first states the following as requisites to the readmission: Application on the form provided, the payment of arrearages and the current month's dues, and a proposition fee of $1. The appellee complied with all these prerequisites. The constitution then contains some other language which is not shown in the record and concludes with these words: "All such readmitted persons must again sign the 'constitution.'" Literally, the signature is a condition subsequent to readmission. Of course, there is some reason for saying that section 151 should be construed in connection with section 122, as they deal with the same general subject, and that, construed as a whole, it appears that the signing of the constitution was intended to be made a condition precedent to the readmission and liability of the order for insurance. To say the least of it, we think the provision is ambiguous, and such fact furnishes an additional reason for holding that in such matter the appellee could rely upon the construction placed thereon by the lodge and its officers under whose direction he was proceeding in gaining readmission to the Brotherhood. After all, the signing of the constitution in such case seems to be largely a formal matter. Appellee's signature to the constitution when first inducted into the order in connection with the agreement contained in his signed application for readmission would seem to be sufficient evidence of his agreement to be bound by the provisions of the constitution in his relations to the lodge.

[9] We think, under the facts of this case, the failure to sign the constitution did not deprive the appellee of the benefit of his membership in the Brotherhood, including his right to the insurance protection for which he had paid. We therefore affirm the judgment of the trial court.