(173 App. Div. 292)

### CROGAN v. PERSION.

(Supreme Court, Appellate Division, First Department. June 2, 1916.)

1. APPEAL AND ERROR ⟾888(2)—RECORD—PLEADINGS—AMENDMENT.
   In an action against a labor union for death benefits, where an amendment to the first count of the complaint, alleging waiver of observance of the constitution with respect to payment by local unions of monthly per capita taxes, was allowed by consent, but counsel failed to ask a like

⟾For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

amendment to other counts in the complaint, alleging the other cause of action for death benefits, it being manifest that the theory upon which the complaint was amended was understood as applying to all of the claims, a similar amendment of the other counts will be allowed in support of judgment.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3619; Dec. Dig. ☞888(2).]

2. APPEAL AND ERROR ☞931(4)—REVIEW—SCOPE—FINDINGS—WAIVER.

Where defendant labor union waived a finding on a question of fact as to sending of a letter notifying subordinate lodge of its suspension, on the expression of opinion by the court that it was immaterial as sent under a void amendment to the constitution, defendant is not entitled to have the appeal considered as if the letter was sent.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3764; Dec. Dig. ☞931(4).]

3 BENEFICIAL ASSOCIATIONS ☞16—ACTIONS—ESTOPPEL.

Where a labor union for a period of over two years did not enforce the provision of its constitution requiring prompt payment of a per capita tax on penalty of suspension, and recognized the local union as in good standing although it was continuously in arrears during that time, the local union and its members were justified in inferring that compliance with the strict letter of the constitution would continue to be waived until notice, and the defendant is estopped from claiming suspension of the local lodge.

[Ed. Note.—For other cases, see Beneficial Associations, Cent. Dig. §§ 32–35; Dec. Dig. ☞16.]

4. BENEFICIAL ASSOCIATIONS ☞18(4)—LOCAL UNION—POWER OF FINANCIAL SECRETARY—AGENCY.

As the secretary of a local labor union in forwarding the per capita tax is acting as the agent of the international union, in the absence of authorization by the members of the local union, his action in demanding and receiving back an amount of money on the refusal of the international union to apply it as a per capita tax was not binding upon the members.

[Ed. Note.—For other cases, see Beneficial Associations, Cent. Dig. § 44; Dec. Dig. ☞18(4).]

5. BENEFICIAL ASSOCIATIONS ☞18(4)—CONSTITUTION—WAIVER OF PROVISIONS.

When, owing to a uniform course of dealings, a strict compliance with the constitution of a labor union with reference to payment of per capita tax has been waived, payment must be made within a reasonable time.

[Ed. Note.—For other cases, see Beneficial Associations, Cent. Dig. § 44; Dec. Dig. ☞18(4).]

6. APPEAL AND ERROR ☞930(3)—REVIEW—QUESTIONS OF FACT.

Where there was no request to have a question of fact submitted to the jury, that question must be deemed to have been left to the trial court and to have been determined in favor of the respondent.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3759; Dec. Dig. ☞930(3).]

7. APPEAL AND ERROR ☞241—PRESENTING GROUNDS OF REVIEW—ACTION FOR BENEFITS.

In an action against a labor union for death benefits, contention of defendant that plaintiff should have shown that deceased members were under 50 years of age and in good health when admitted, not being sufficiently raised at the trial by a general motion to dismiss the complaint, will not be considered on appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1413–1416; Dec. Dig. ☞241.]

8. BENEFICIAL ASSOCIATIONS ⬤⟹18(2)—PROOF OF DEATH—CONDITION PRECED-
ENT.

In an action against a labor union for death benefits, failure to show compliance with certain conditions precedent to the liability of the local union could not affect the plaintiff's right as against the international union, which neither by the constitution nor by the membership certificate is so conditioned.

[Ed. Note.—For other cases, see Beneficial Associations, Cent. Dig. § 42; Dec. Dig. ⬤⟹18(2).]

9. APPEAL AND ERROR ⬤⟹173(12)—REVIEW.

In an action against a labor union for death benefits, where it appeared that all due books showed stamps sent by the international union up to the last stamps sent, payment of local dues after no stamps were received, not being raised at the trial, will not be considered on appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1109, 1113; Dec. Dig. ⬤⟹173(12).]

10. BENEFICIAL ASSOCIATIONS ⬤⟹18(4)—PROOF OF DEATH—ESTOPPEL.

Where an international labor union furnished stamps to the local union to be used as receipts for payment of dues only one month in advance, it is estopped, by a contention that the local union was suspended and refusal to receive the per capita tax and furnish forms for proof of death of members, from contending that there can be no recovery owing to the failure of due books to show the payment of dues for the current month, or the preceding month, since it is a reasonable inference that if the per capita tax was not accepted the stamps were not forwarded to the local union.

[Ed. Note.—For other cases, see Beneficial Associations, Cent. Dig. § 44; Dec. Dig. ⬤⟹18(4).]

11. BENEFICIAL ASSOCIATIONS ⬤⟹18(4)—SECRETARY OF LOCAL UNION—AGENCY.

Where it was the duty of the financial secretary of a local lodge to transmit certificates of death and due books to the international labor union, in accordance with its constitution, in performing that duty he was acting as its agent.

[Ed. Note.—For other cases, see Beneficial Associations, Cent. Dig. § 44; Dec. Dig. ⬤⟹18(4).]

12. BENEFICIAL ASSOCIATIONS ⬤⟹18(4)—PROOF OF DEATH—WAIVER.

The claim of the international labor union that a local lodge was under suspension constituted a waiver of presentation of death certificates and due books to the union.

[Ed. Note.—For other cases, see Beneficial Associations, Cent. Dig. § 44; Dec. Dig. ⬤⟹18(4).]

McLaughlin, J., dissenting.

Appeal from Trial Term, New York County.

Action by Annie Crogan against Achilles Persion, as treasurer of International Hod Carriers' and Building Laborers' Union of America. Judgment for plaintiff, upon a verdict directed by the court at the close of the evidence, and defendant appeals. Affirmed, subject to a reduction of costs.

Argued before CLARKE, P. J., and McLAUGHLIN, LAUGHLIN, SCOTT, and PAGE, JJ.

Ashley & Scott, of New York City (Andrew Foulds, Jr., and William F. Ashley, Jr., both of New York City, of counsel), for appellant.

William A. McQuaid, of New York City, for respondent.

⬤⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

LAUGHLIN, J. The International Hod Carriers' and Building Laborers' Union of America is a voluntary unincorporated association consisting of more than seven members, and by virtue of its constitution it comprises the International Union and subordinate unions "holding legal and unclaimed charters" granted by the International Union. Its objects are the protection of its members, their mutual assistance in obtaining fair and just treatment, and the elevation of their social position. The husband of the plaintiff was a member of Local Union 36, and she brought this action to recover from the International Union a death benefit of $100 on his death and to recover on assignments made to her for like death benefits with respect to ten other members of the same local union; but she abandoned the cause of action on one of the assignments. It was conceded that the causes of action for the other death benefits had been duly assigned to her, and that if there was any liability it was enforceable by her. At the close of the evidence, it was conceded that there was no question of fact which required submission to the jury, and both parties moved for a direction of a verdict; whereupon the court directed the verdict in favor of the plaintiff for the ten death benefits.

The principal points depend on the correctness of the contention of appellant that the local union was under suspension when the members died, and that therefore the International Union is not liable. Section 38 of the constitution of the International Union made it the duty of the financial secretary of each local union to report regularly each month to the general secretary-treasurer giving the names of all members in good standing and remitting 15 cents as a monthly per capita tax for each member, which was required to be paid on or before the 10th day of each month for the then current month; and section 39 provided that any local union "neglecting to report regularly each month shall stand suspended from the International Union without further notice and their members debarred from all benefits." Although it is now conceded that these were the provisions of the constitution in force at the times in question, the International Union in attempting to suspend the local union proceeded under an amendment to the constitution adopted, not at a biennial session of the International Union as required by the constitution, but by a referendum vote of the members of the unions in 1908. That amendment, which it is now conceded was illegal and void, purported to authorize the general secretary-treasurer to send notices to local unions in arrears and to afford them a further opportunity to pay before suspension for nonpayment of the monthly per capita tax. A representative of the International Union, who, owing to the illness of the general secretary-treasurer, was exercising the functions of that office in the name of the official, who was ill, claims that on the 11th day of February, 1909, recognizing the amendment as valid, he mailed a letter to the secretary of the local union to the effect that unless the per capita tax for January was paid within 15 days the local union would be suspended, and he drew attention to the provisions of the constitution as amended, which evidently were to that effect,

although they are not in the record. The secretary of the local union testified that he did not receive the notice. On its being suggested at the close of the evidence by counsel for defendant that there was a question of fact with respect to whether that notice was given, the court expressed the opinion that it was more in the nature of a threat than a notice, and was not very material, and this was acquiesced in.

In view of the concession that the provisions of the constitution under which the notice was given were void, the only possible theory on which the sending of that letter could be deemed material is as possibly indicating a determination on the part of the International Union to insist upon the prompt payment of the per capita tax and to preclude the local union from thereafter relying on a waiver of prompt payment by a custom, that had existed, of transmitting the per capita tax at any time that suited their convenience after the expiration of the period within which the transmission thereof was required by the constitution; but that evidently was not claimed, and, if it had been, defendant should have had the fact found with respect to whether or not the letter was written. I am of opinion, therefore, that no question arises on the facts of this case with respect to the rights of the local unions to indulgence thereafter, for from that time on the general secretary-treasurer of the International Union took and maintained the position that the local union was suspended, and that the only manner in which it could become reinstated was by complying with the void provisions of the constitution as amended and by paying a large per capita reinstatement fee thereby required. The local union insisted that the action of the general secretary-treasurer in declaring it suspended was illegal, and that it was entitled to pay the per capita tax without any deduction for reinstatement, and that the strict observance of the other provisions of the constitution which were concededly valid had been waived by a uniform course of practice between the International Union and the local union.

[1] In the original complaint, waiver of the observance of the provisions of the constitution with respect to the payments by the local union of the monthly per capita tax was not pleaded, but during the presentation of the plaintiff's case counsel for plaintiff moved to amend the first count of the complaint by duly alleging the facts as herein stated with respect to the waiver of the prompt payment of the monthly dues or per capita tax. The motion was allowed by consent, and the answer was amended by incorporating therein a denial of the new allegations with respect to waiver. The causes of action for the several death benefits are alleged in separate counts. Counsel for plaintiff failed to asked a like amendment with respect to the other counts. He claims that this was an oversight, and asks that the amendment be now allowed in support of the judgment. It is manifest that the theory on which the complaint was amended was understood as applying to all of the claims, and therefore the appellant would not be prejudiced with respect to the merits of its defense by allowing the amendment at this time. The request should therefore be granted.

[2] It was shown by the uncontroverted evidence that Local Union 36 was chartered in the month of November, 1906, and that, with the exception of the initial monthly per capita tax, no monthly per capita tax was ever paid within the time prescribed therefor by the constitution, and that all monthly per capita taxes were paid by the local union down to the 1st day of July, 1909, and that until that day said local union and the members thereof, including those on account of whose death this action is brought, were in good standing with the parent organization, notwithstanding the fact that with the exception stated the local union and its members when every payment of per capita taxes was made, such payments accepted and duly receipted for by the general secretary-treasurer of the International Union, were in arrears from 2 to 116 days, and. that with the exception of the notice claimed to have been given as aforesaid on the 11th day of February, 1909, there is no evidence that there was any complaint with respect to the failure of the local union to pay the per capita tax promptly. The members whose deaths are involved in this action died between the 15th day of March and the 4th day of November, 1909.

We have therefore a case where under the strict letter of the constitution the local union would be under suspension at all times down to the deaths of those members, a period of upwards of $2\frac{1}{4}$ years; and yet the International Union at all times, with the exception already stated, recognized this local union as in good standing. There is no evidence of any action on the part of the local union with respect to the notice claimed to have been sent to it on February 11, 1909. For the reasons already stated, appellant is not entitled to have the appeal considered as if that letter was sent. On March 5, 1909, the financial secretary of the local union mailed a money order, which was the customary and required manner of transmitting funds to the general secretary-treasurer of the International Union, for the per capita taxes for January and February of that year, together with a report for those months, and stated in explanation of the delay that many members, owing to being out of work, had been slow in paying their dues. To this a reply under date of March 30, 1909, was received, stating that the only application which the International Union could make of the money was to apply it to the credit of the local union "as a reinstatement fee as per section 36 of the constitution and general rules," and that, if that was not satisfactory, the money would be returned. The secretary of the local union answered on April 2d refusing to consent to the application of the money under the void reinstatement provisions, and requesting the return of the money if it was not to be applied for the purposes for which it was trasmitted. The matter was then referred by the general secretary-treasurer of the International Union to the general president. On the 10th of April, the secretary of the local union again demanded that the money be returned if it was not to be applied as intended; and on the 22d day of April he received a reply stating that the general president had not reported on the matter, but that the money would be returned if demanded. On the 24th of April he again demanded that it be returned, since it was not

applied to the sole purpose for which it was sent, and on the 27th of April it was returned.

[3-5] It is quite clear, I think, on these facts, that the action could not be successfully defended on the theory that the local union and its members were under suspension, for, after this long course of business between the local union and the International Union, the secretary of the local union and its members, if they were in arrears also, were justified in inferring that compliance with the strict letter of the constitution would continue to be waived, as it had been in the past, at least until some notice was given which would enable them to protect their interests, and appellant is estopped from claiming suspension under the strict letter of the constitution. See McClure v. Supreme Lodge, 41 App. Div. .131, 59 N. Y. Supp. 764; Supreme Lodge Nat. Reserve Ass'n v. Turner, 19 Tex. Civ. App. 346, 47 S. W. 44; Bacon's Benefit Societies (3d Ed.) vol. 2, pp. 902, 1084. It is also claimed that the action of the secretary of the local union in demanding the return of the remittance and in receiving it back was binding on the members and constituted an acquiescence in the suspension of the local union, and Hand v. Supreme Council, 44 App. Div. 484, 60 N. Y. Supp. 808, affirmed 167 .N. Y. 600, 60 N. E. 1112, is cited to support that contention. In that case a member of a fraternal order who was under suspension for the nonpayment of dues left the amount of an assessment in a box, according to custom, for the collector, who on receiving it notified him that it could not be accepted as it was so deposited too late and that he could get the money by calling for it and suggested an application for reinstatement. The member called and received the money back and promised to apply for reinstatement, but did not, and took no further action, although he lived some four months thereafter. It was held he and those claiming through him were estopped from asserting that he still remained a member in good standing. Here there is no evidence that the members authorized the secretary to demand or receive the money back, or even that they knew that he had done so. He was not their agent for such purpose, and they were no more bound by his action in recovering the money back than if he had failed to forward it in the first instance, and in doing that it is well settled that he was acting as agent of the International Union. Matter of Brown v. Order of Foresters, 176 N. Y. 132, 68 N. E. 145; McClure v. Supreme Lodge, supra.

[6] It may be that there was a question of fact with respect to whether the members of the local union, and particularly those on account of whose membership this action is brought, paid their respective shares of the per capita tax to the local union within a reasonable time, which is the time given by law when, owing to a uniform course of dealings, strict compliance has been waived; but as there was no request to have the question submitted to the jury, and that was not the theory of the defense, that question must be deemed to have been left to the trial court and to have been determined in favor of the respondent.

[7, 8] The appellant also contends that it was incumbent upon the plaintiff to show that the deceased members were not over 50 years

of age when they applied for membership, and that they were found to be in good health when they were admitted. We find nothing in the constitution of the International Union or in the certificates of membership making either of these requirements a condition precedent to the right to recover the death benefit. Section 53 of the constitution provides, among other things, that upon the death of a member, if he has been continuously in good standing in the International Union for the period of two years, the International Union will pay the sum of $100 as a death benefit "on proper proofs furnished by the secretary of the union; due books of the deceased members to accompany all claims for death benefits." And section 54 provides that death certificates must be accompanied by the due books of the deceased members, and further that, "to be entitled to benefits the member's book must correspond with the reports made to the general office by the financial secretary of the union of which he is a member, and must also show that at the time of death his due book was stamped for the current month or the previous month," and that the financial secretary of the local union of which the deceased is a member must notify the general secretary-treasurer immediately upon the death of a member in good standing who is eligible for benefits as provided for by the constitution. Section 60 of the constitution provides as follows:

"All right of action upon the International Union by any beneficiary member shall be absolutely barred, unless proofs of death shall be forwarded to the general secretary-treasurer, together with the record of his standing in his local union of which he was a member as hereinafter required within one year after such date, and it shall be likewise barred unless such action shall be commenced in some court of competent jurisdiction within one year after the official rejection of any claim, if any, by the International Union. No death benefit shall be paid on a member if he was over three (3) months in arrears for dues to the International Union at the time of his death."

Section 103 of the constitution provides that, subject to the indorsement and approval of the general president, by-laws not in contravention of the constitution may be made for the special government of local unions. The local unions also paid death benefits. By section 20 of the constitution of the International Union, the general secretary-treasurer was required to issue through the secretaries of the local unions universal membership due books to the members, and section 38 required him upon the receipt of the monthly report each month from the local union to furnish to the financial secretary thereof "the required number of stamps to receipt members in their due books," and provided that all members would be required to carry official membership due books to enable them "to receive their monthly stamp when paying dues to their local union, in order that the members may be entitled to participate in the insurance department as provided for by section 53 of this constitution." There was printed on the inside of the cover of the due books, over the name of the general secretary-treasurer, among other things, a statement that the International Union would make the payments of the death benefits to members in good standing "and not exceeding fifty (50) years of age when applying for membership, and providing that said member was found to be in good health when admitted." There was also printed at the same place

the certificate of membership, which recited that the member was "entitled to all rights, privileges and benefits of the insurance department, according to the terms of specification of the constitution and laws of the I. H. C. & B. L. U. of A. The holder hereof agrees that his application for membership in the local union of the I. H. C. & B. L. U. of A. shall be subject to the constitution and laws, and for any failure on his part to comply with the constitution and laws, or for failure to pay dues as required by the constitution shall make his membership void." The printed matter contained other provisions with respect to the death benefit payable by the local union, and it contained a blank form for affixing stamps to be furnished by the International Union on the payment of the monthly dues, and provided that, on payment of the monthly dues by a member, the financial secretary should paste one of such stamps in the space covering the "month or months" for which the member pays, and should cancel the same showing the date of payment.

There are two answers to the contention of the appellant that it was incumbent on the plaintiff to show that the members were under 50 years of age and in good health when admitted. The first is that the question does not appear to have been raised on the trial. The only theory upon which it is claimed that it was raised is by the general motion to dismiss the complaint, which was insufficient. If the point had been taken, the requisite evidence might have been presented. The second is that, while those provisions may be conditions precedent to the liability of the local union, they cannot affect the plaintiff's right as against the International Union, which neither by the constitution nor by the membership certificate is so conditioned. See McClure v. Supreme Lodge, supra; Supreme Lodge Nat'l Reserve Ass'n v. Turner, supra; United Brothers of Friendship v. Haymon, 67 Ark. 506, 55 S. W. 948.

[9] It is further contended by the appellant that there was a failure of proof of the performance of the conditions precedent to liability with respect to the payment of monthly dues or per capita tax, both to the local union and to the International Union. It is claimed that there is no evidence of payment of dues to the local union; and that from other printed matter on the inside of the cover of the due books the certificate of membership provided that to be eligible for benefits a member must be in continuous good standing with all dues fully paid to the local union, and not more than 60 days in arrears for dues to the International Union. It does not clearly appear that that was a provision of the certificate of membership, or by what authority it was so printed. The learned counsel for the appellant is, however, in error in contending that no proof whatever was offered with respect to the payment of the dues to the local union. No question appears to have been raised upon the trial with respect to a default in payment of dues to the local union, and doubtless for that reason the proof was confined to the payment of dues to the International Union. The dues exacted by the local union were 50 cents per month, and under the by-laws the stamp was affixed at the time of such payment, and the transmission of the per capita tax to the International Union in-

volved the appropriation of 15 cents of the monthly dues paid to the local union. It thus appears that both local and International dues were paid for the months for which the due books are stamped. The dates of the deaths of the ten members, and the last month for which the payment of dues is shown by a stamp in the due book, and the dates on which such payments were actually made, are as follows:

| | Date of death. | Last month stamped. | Date of last payment. |
|---|---|---|---|
| One member | March 16, 1909. | March | March 15th |
| " " | April 7, 1909. | February | March 29th |
| " " | April 9, 1909. | February | February 15th |
| " " | April 25, 1909. | March | March 15th |
| " " | May 15, 1909. | March | April 26th |
| " " | June 5, 1909. | March | March 15th |
| " " | June 10, 1909. | April | March 1st |
| " " | July 30, 1909. | May | March 15th |
| " " | September 1, 1909. | May | March 1st |
| " " | November 4, 1909. | entire year | |

It thus appears that none of these members were in arrears for dues to the International Union more than three months; that one had overpaid his dues in advance; one had paid for the current month of his death; one had paid for the month preceding his death; and seven had not paid for the month in which they died, or the preceding month. Whether they continued to pay their dues to the local union after the last dates of payment to both thus shown by the canceled stamps was not shown; but, if the point had been taken on the trial, payment of local dues after no stamps were received from the general secretary-treasurer to evidence payment might have been shown, if material. We are of opinion that appellant cannot take that objection now.

[10] It is insisted that the failure of the due books to show payment of the per capita tax for the month in which the member died, or the preceding month, is fatal to a right to recover in view of the provisions of sections 54 and 38 of the constitution to which reference has been made. If that position were tenable, it would limit the recovery to three death benefits; but I am of opinion that the appellant is estopped by its unfounded contention that the local union was suspended, and by its unreasonable refusal to receive the per capita tax and to furnish forms for proof of death of members, from now contending that there can be no recovery owing to the failure of the due books to show the payment of dues for the current month of the member's death, or the preceding month, for under the system prescribed by the constitution the stamps which were used as receipts for the payment of dues were only furnished by the general secretary-treasurer for one month in advance, and at the time of the payment of the per capita tax due, and since he refused to receive the per capita tax it is a reasonable inference, although it was not shown, that the International Union would not furnish the stamps to show the payment of the dues. Moreover, as already stated, that point was not raised upon the trial, and the appellant should not be permitted to succeed here on a failure of proof which might have been obviated had it seasonably taken the point.

[11, 12] It is also contended in behalf of the appellant that plaintiff failed to prove compliance with the provisions of the constitution with respect to presenting certificates of death and the due books containing stamps showing the payment of dues for the current or preceding month. The uncontroverted evidence shows that, within from two days to one week of the death of each member, a certificate of his death, together with his due book, was delivered to the financial secretary of the local union for transmission to the International Union. It being the duty of the financial secretary, enjoined by the constitution of the International Union, to transmit such certificates and due books to the International Union, in performing that duty he was acting as its agent. Matter of Brown v. Order of Foresters, supra, and McClure v. Supreme Lodge, supra. The earliest of the ten deaths involved herein was on the 16th day of March, 1909; and the next was on the 7th of April; and the next on the 9th of April, 1909. The evidence shows that the financial secretary of the local union notified the International Union with respect to the death of the members who died on the 16th of March and on the 9th of April, and asked for forms to be filled out upon which to make the return required by the constitution, and he received no reply thereto. This doubtless was owing to the fact that the International Union claimed that the local union was under suspension; but, in any event, it constituted a waiver of the presentation of the death certificates and due books to the International Union. No question is presented with respect to the right of appellant to make a deduction for unpaid monthly per capita taxes or dues of the ten members; but it would seem to have such right, and, if it so desires, the proper deduction may be made on the settlement of the order.

I am of opinion, therefore, that the other counts of the complaint should be deemed amended as herein stated, and judgment affirmed, with costs subject to reduction as herein stated.

CLARKE, P. J., and SCOTT and PAGE, JJ., concur. McLAUGHLIN, J., dissents and votes for reversal.