No. 22,761.

THE HOME LUMBER COMPANY, a Trust Estate, and J. K. STAN-
LAND, W. C. LOWREY, D. C. DONAHUE, as Trustees of the
said Trust Estate, *Plaintiffs*, v. RICHARD J. HOPKINS et al.,
as THE STATE CHARTER BOARD OF THE STATE OF KANSAS,
*Defendants.*

SYLLABUS BY THE COURT.

1. DECLARATION OF TRUST—*Agreement Created a Trust—Not a Partner-
ship.* An agreement and declaration of trust provided for the transfer
of property to trustees who were given power to issue negotiable cer-
tificates to shareholders, carry on a general business, invest and
reinvest the funds of the estate at will, pay dividends at their discre-
tion and make proportionate distribution of the assets among the
shareholders at the end of twenty years. The shareholders had no
authority to instruct or direct the trustees and had no control, either
as individuals or in association, except to elect the trustees, and no
personal liability could arise against them upon any contract, obli-
gation or action entered into or taken by the trustees, and persons
dealing with the trustees could only look to the trust estate for satis-
faction. *Held*, that the agreement created a trust and not a partner-
ship and that the shareholders cannot be held individually liable for
the obligations of the trust.

2. SAME—*Unincorporated Company—Application for Permission to Sell
Stock—Must Conform to Regulations Imposed by Statute on Corpora-
tions.* The trust, although an unincorporated company, is deemed to be
a corporation within the meaning of section 6 of article 12 of the
state constitution, since the agreement under which the company is
organized gives it powers and privileges not possessed by individuals
or partnerships, and therefore it can only sell securities and stock
within the state by conforming to the regulations imposed by statute
upon corporations.

Original proceeding in mandamus. Opinion filed February
7, 1920. Writ denied.

*Bennett R. Wheeler, S. M. Brewster,* and *John L. Hunt,* all
of Topeka, for the plaintiffs.

*Richard J. Hopkins,* attorney-general, and *Maurice McNeill,*
assistant attorney-general, for the defendants.

The opinion of the court was delivered by

JOHNSTON, C. J.: This proceeding was brought by the
plaintiff to compel the state charter board to consider its ap-

plication for permission to sell its stock and securities within the state, and to find and determine whether the plaintiff had complied with the statutes of the state and is entitled to dispose of securities and stock in Kansas. The plaintiff, an unincorporated association, submitted its agreement or declaration of trust under which it was organized, and its plan of operations, to the charter board, with a request that it be permitted to sell its stock and securities within the state. That tribunal concluded that the agreement created a partnership and was not such an organization as was entitled to sell securities and stock in Kansas, because the agreement created partnership liabilities and the plan of business was inequitable and unfair. The board therefore declined to investigate or consider the solvency of the company, whether its plan of business was otherwise honest and fair to investors, its advertising matter free from deception, and whether or not a reasonable value had been placed upon the assets of the company which was offered in exchange for property and securities. Having determined that each shareholder became liable as a partner and that the business of the sale of its securities and stock was to be conducted upon a plan regarded to be unfair and inequitable, the board deemed it unnecessary to proceed further with the investigation.

The first and principal question presented for determination is whether the company as organized constitutes a partnership. If the shareholders are not partners liable for the debts of the company, and the business contemplated is not contrary to law or public policy, it was the duty of the charter board to investigate and determine the merits of the plaintiff's application. The agreement is a declaration of trust in which parties transfer to trustees certain property interests, and for the purpose of defining the interest of each subscriber in the estate, the trustees were to issue negotiable certificates of shares to the extent of 150,000, each of the value of $1, and which they might if they deemed it expedient, increase to 1,000,000 shares. They engaged to use the property and proceeds of the shares sold in a general manufacturing, mercantile, or commercial business, in any and all of its branches; to buy, sell, hypothecate or otherwise deal in bonds and stock, debentures, notes and all forms of obligations of corporations,

countries, states, counties, and municipalities or persons. In fact they were authorized to buy, sell and deal in all kinds of property and to carry on all kinds of business not inconsistent with law. It was stipulated that the trustees should not be less than three nor more than five in number, to be elected annually by the shareholders at their meetings, and vacancies in the number of trustees are to be filled by the remaining trustees.

In respect to the functions, obligations and liabilities of the trustees, it is provided:

"The trustees shall hold the legal title to all property at any time belonging to the trust, and shall have and exercise the exclusive management and control of the same; they shall assume all contracts for, and obligations and liabilities in connection with or growing out of the property assigned to them by the subscriber and mentioned in the schedule filed with the trustees, also, in the management of the same; and to the extent of the value of such property and business, but not personally, shall agree to hold the subscribed and any persons associated with and acting with him, harmless, and indemnified from and against any loss, cost, expense or liability upon, or by reason of, or in connection with any contract, obligation or liability; they may adopt and use a common seal with such designs as they, in their discretion, may deem best suited to disclose the purposes of the company; they may collect, sue for, receive and receipt for all monies at any time due to said trust; they may employ counsel to begin, prosecute, defend or settle suits at law, in equity or otherwise; with the consent of all the trustees given at a meeting called for that purpose, but not otherwise, unless the general power shall at any time be delegated by a full board meeting to any one particular individual member or members, in writing; they may borrow money for the purposes incidental to the proper management and like manner as they may deem best, to secure said loans; and they shall incur no debt or loan liability except such as may be incidental to the proper management of the property held by them and the other proper carrying out of the purposes of their trust.

"In addition to the shares to be originally issued to the subscribed as hereinbefore provided, the trustees shall issue and sell at public or private sale, upon such terms and for such prices as they may deem expedient, such additional shares as may be necessary to provide funds to carry on and accomplish the purposes hereinbefore mentioned and set forth. The total amount to be issued by said trustees shall not in any event exceed one million (1,000,000) shares. The trustees may accept property or services in lieu of cash for the shares issued by them, and they shall be the sole judges of the value of said services or property.

"So far as strangers to this trust are concerned, a resolution of the trustees authorizing a particular act to be done, shall be conclusive evidence in favor of such strangers that such act is within the powers of the

trustees, and no purchaser from the trustees or on loaning money to the trustees, shall be bound to see the application of the purchase money or other consideration paid or delivered by or from said purchaser or loaner to or for said trustee."

Other provisions in the agreement are to the effect that the trustees may make, amend, and repeal by-laws, may elect officers and appoint agents and fix their compensation, may pay themselves such compensation as they deem to be reasonable, and they shall not be liable for errors of judgment and shall pay only such dividends as they deem advisable, the amount of such dividends to be left wholly to their discretion. The trust is to continue not longer than twenty years and when ended the trustees are to wind up its affairs, liquidate its assets and distribute the same among the holders of the shares according to the number of shares held by each. It was also provided that the death of a shareholder should not determine the trust nor entitle the legal representatives of such shareholder to an accounting or to take any action in any court or elsewhere against the trustees, but that the regular representatives of the deceased shareholder should succeed to the rights of the decedent. There were further provisions that:

"The ownership of shares hereunder shall not entitle the shareholders of any title in or to the trust property whatsoever or right to call for a partition or division of same, or for an accounting, or for any voice or control whatsoever of the trust property, or of the management of said property or business connected therewith by the trustees.

"The trustees shall have no power to bind the shareholders personally, and the subscriber and his assigns and all persons and corporations extending credit to, contracting with, or having any claim against the trustees shall look only to the funds and property of the trust for payment under such contract or claim, or for the payment of any debt, damage, judgment or decree, or of any money that may otherwise become due or payable to him from the trustees, so that neither the trustees nor the shareholders present or future, shall be personally liable therefor.

"In every written order, contract or obligation which the trustees shall give or enter into, it shall be the duty of the trustees to stipulate that neither the trustees nor the shareholders shall be held for any personal liability, under or by reason of such contract, order of obligation."

As will be observed, the title as well as the exclusive management and control of the property of the trust are absolutely vested in the trustees. The shareholders have no voice or control in the property or its management and no right even to call for an accounting by the trustees. They can exercise no

authority as individuals nor in association, except to elect the trustees, and when new trustees are elected they have the same absolute authority and control that are specified in the declaration of trust. It is expressly stated that no personal liability of a shareholder can arise by reason of any contract the trustees may make, any obligation they may assume or any judgment rendered against them, and to put the matter of personal liability beyond cavil it is provided that in every written order, contract, or obligation, given or entered into by the trustees, they are required to write into it the provision that the shareholders as well as the trustees shall be free from any personal liability. Under the declaration all persons extending credit to the trustees or entering into contracts with them must look alone to the funds and property of the trust estate for payment.

Whether an agreement committing the possession and control of property to trustees for the benefit of shareholders creates a trust or partnership, depends upon the interest transferred and the extent of the control given to the trustees. If the title is transferred to them and they are given the exclusive power to act as principals in the management of the trust property, a true trust is created, but if the shareholders are coproprietors and the trustees are subject to the control of the shareholders in the management of the trust, it is deemed to be a partnership. Such a test has been applied in Massachusetts, where a large volume of business is done under trust agreements. The cases of *Hoadley v. County Commissioners*, 105 Mass. 519; *Whitman v. Porter*, 107 Mass. 522; *Phillips v. Blatchford*, 137 Mass. 510; *Ricker v. American Loan & Trust Co.*, 140 Mass. 346; *Williams v. Boston*, 208 Mass. 497; *Frost v. Thompson*, 219 Mass. 360; *Priestley v. Treasurer & Receiver General*, 230 Mass. 452, are examples of those which fall on the partnership side of the line. On the other hand, *Mayo v. Moritz*, 151 Mass. 481, and *Williams v. Milton*, 215 Mass. 1, illustrate the type of agreements which are held to create a pure trust. In the *Williams v. Milton* case there is a full discussion of the elements entering into the two classes of agreements, and the line dividing them is clearly pointed out. It was said:

"The difference between *Hoadley v. County Commissioners*, 105 Mass. 519 (involving the same indenture as that in *Gleason v. McKay*, 134 Mass. 419), *Whitman v. Porter*, 107 Mass. 522, *Phillips v. Blatchford*, 137 Mass. 510, *Ricker v. American Loan & Trust Co.*, 140 Mass. 346, and *Williams v. Boston*, 208 Mass. 497, on the one hand, and *Mayo v. Moritz*, 151 Mass. 481, on the other hand, lies in the fact that in the former cases the certificate holders are associated together by the terms of the 'trust' and are the principals whose instructions are to be obeyed by their agent who for their convenience holds the legal title to their property. The property is their property. They are the masters. While in *Mayo v. Moritz*, on the other hand, there is no association between the certificate holders. The property is the property of the trustees and the trustees are the masters. All that the certificate holders in *Mayo v. Moritz* had was a right to have the property managed by the trustees for their benefit. They had no right to manage it themselves nor to instruct the trustees how to manage it for them. As was said by C. Allen, J., in *Mayo v. Moritz*, 151 Mass. 481, 484, 'The scrip-holders are *cestuis que trust*, and are entitled to their share of the avails of the property when the same is sold,' and that is all to which they were entitled. In *Mayo v. Moritz* the scrip-holders had a common interest in the trust fund in the same sense that the members of a class of life tenants and the members of a class of remaindermen (among whom the income of a trust fund and the corpus are to be distributed respectively) have a common interest. But in *Mayo v. Moritz* there was no association among the certificate holders just as there is no association although a common interest among the life tenants or the remaindermen in an ordinary trust. For a decision in this commonwealth somewhat like *Mayo v. Moritz, ubi supra*, see *Hussey v. Arnold*, 185 Mass. 202. See, also, in this connection, *Makin v. Savings Institution at Portland*, 23 Maine, 350; *Burt v. Lathrop*, 52 Mich. 106." (p. 8.)

Another case in line with the theory of *Williams v. Milton*, supra, is the *Wells-Stone Mercantile Co. v. Grover*, 7 N. D. 460, where a deed of trust was executed by a debtor in which creditors joined. It was said:

"An insolvent debtor made a deed of trust, in which his creditors joined. By the terms of the deed, the trustee was to continue the business of the debtor as long as he should deem it for the interests of the creditors so to do. The entire management and control of the business were intrusted to him. Whenever the trustee deemed it best to discontinue the business, the property was to be sold, and the claims of all the creditors signing the deed were to be paid from the proceeds; the surplus, if any, to go to the debtor. *Held*, that the creditors signing the deed did not thereby render themselves the real proprietors of the business, and, therefore, that they were not liable to creditors of whom the trustee had purchased goods in the prosecution of such business. The relation created by the instrument was that of trustee and beneficiary, and not that of principal and agent." (Syl. ¶ 1.)

Lumber Co. v. State Charter Board.

Still another case closely in point is *R. I. Hospital Trust Co. v. Copeland,* 39 R. I. 193, which is as follows:

"An association organized and doing business under a declaration of trust, the beneficial interest under which is divided into transferable shares, the title to the property being in the trustees only who are given the most ample powers of management and control, and are prohibited from binding the shareholders personally; the shareholders not being liable for any assessment; persons contracting with the trustees being required to look to the fund and not to the trustees or stockholders; power being given the trustees to declare dividends, is in its nature a true trust and not a partnership, and the holders of the 'stock' so-called, are not under individual and personal liability for any of the obligations or indebtedness of the trust." (Syl. ¶ 1.)

(See, also, *Hussey v. Arnold,* 185 Mass. 202; *In re Associated Trust,* 222 Fed. 1012; *Crocker v. Malley,* 249 U. S. 223; *Cox v. Hickman,* 8 H. L. C. 268; *Smith v. Anderson,* 15 Ch. D. 247; *Crowther v. Thorley,* 32 W. R. 330; *In re Siddall,* 29 Ch. D. 1; *In re Thomas,* 14 Q. B. D. 379; *In re Faure Electric Accummulator Co.,* 40 Ch. D. 141; Wrightington on Unincorporated Associations, p. 49; Chandler on Express Trusts under the Common Law, p. 19.)

Following the rule of the authorities, it is clear that the shareholders herein cannot be regarded as partners. They had surrendered proprietorship in the property to the trustees and have no control over it or of the business done by the company, and neither can they be held liable upon any contract or obligation of the trustees. The latter act as proprietors and principals and conduct the business free from the control of the shareholders and may make and change investments whenever they deem best and make or withhold dividends in their discretion. They do not take orders or directions from shareholders and are in no sense the agents of the shareholders./ While stock is issued to shareholders, the shares give no right except to furnish a basis for the division of profits and for a distribution of the property and funds when the trust is concluded. The stock measures the voting strength of shareholders when trustees are elected, but the fact that they choose trustees with the powers conferred by the declaration of trust is not such control as to make the trustees their agents or give the shareholders the character of partners. It follows that the state

charter board was not warranted in denying the application of the plaintiff upon the ground that it was a partnership.

It does not follow, however, that the plaintiff as organized is entitled to a permit to sell its stock and securities, even if it is found to be solvent, its assets substantial and sufficient, and its plan of business such as would be fair and equitable towards investors. To meet the requirements of our law the company must bring itself within the rules applicable to corporations and conform to the regulations imposed by statute on corporations. The constitution expressly provides that—

"The term corporations, as used in this article, shall include all associations and joint-stock companies having powers and privileges not possessed by individuals or partnerships; and all corporations may sue and be sued in their corporate name." (Kan. Const., art. 12, § 6, Gen. Stat. 1915, § 241.)

The first section of article twelve provides that corporations may be created under general laws, and that no special act conferring corporate powers may be passed by the legislature. It requires no argument to show that the plaintiff has and is proposing to exercise powers and privileges not possessed by individuals or partnerships. There is first the limited liability under which both shareholders and trustees are exempted from all personal liability. The corpus or joint property is to be continued during the existence of the trust freed from the rules of joint tenancy or tenancy in common, and the organization is not dissolved by the death of a shareholder or trustee. The interest of the shareholder is represented and measured by negotiable shares of stock which give voting power much the same as does corporate stock. A common seal is to be adopted and used substantially as is done by corporations, and the trustees "may elect officers who shall have the authority and duties usually incident to like officers in corporations." It is not necessary to the validity of the action of the trustees that there should be a concurrence of all of them, but it is provided that a majority of those present and voting at any meeting shall be sufficient. Other provisions already mentioned give the company powers and privileges beyond those possessed by individuals or partnerships, and within the rule of the constitution the organization is to be regarded as a corporation. Many statutory provisions have been enacted for the organiza-

Lumber Co. v. State Charter Board.

tion and regulation of corporations, which are wholly incon-
sistent with the organization and plan of the plaintiff company,
and with which it will manifestly be unable to conform.   For
this reason the writ of mandamus applied for is denied.

DAWSON, J.:  Dissenting.

## OPINION ON MOTION TO MODIFY JUDGMENT.

### SYLLABUS BY THE COURT.

1. UNINCORPORATED TRUST COMPANY—*Sale of Shares of Stock—Not "Do-
ing Business" Within the Statute.*   A sale of the shares of stock in
the trust in question is held not to be the doing of business within the
accepted meaning of that term, and the plaintiff is entitled to sell its
shares in the state if, upon the inquiry by the state charter board, the
plaintiff is found to measure up to the conditions and qualifications
prescribed by the statute as to the right to sell securities within the
state.

2. SAME—*Application to Sell Shares of Stock—Duty of Charter Board.*
Under the facts of the case it is found to be the duty of the state
charter board to consider and pass upon the merits of plaintiff's ap-
plication for permission to sell shares of stock in the trust, and having
declined to do so, the writ of mandamus to compel such action is
granted.

Original proceeding in mandamus.   Opinion modifying
former judgment filed June 5, 1920.   Writ allowed.

*Bennett R. Wheeler, S. M. Brewster,* and *John L. Hunt,* all
of Topeka, for the plaintiffs.

*Richard J. Hopkins,* attorney-general, and *Maurice McNeill,*
assistant attorney-general, for the defendants.

*William H. Thompson,* of Kansas City, as *amicus curiæ.*

The opinion of the court was delivered by

JOHNSTON, C. J.:  The plaintiff asks for a modification of
the decision and judgment formerly rendered as to the right
of the plaintiff to sell its stock in Kansas, or rather as to the
duty of the state charter board to examine and pass upon its
application to sell shares of stock in the state.

From expressions employed in the pleadings and briefs of
the plaintiff, it was assumed that the application filed with the
state charter board asked permission to sell, not only shares of
stock, but other securities as well.   As one of the purposes for

which the company is organized is to buy, sell and hypothecate bonds, debentures, notes, obligations and other securities issued by private and public corporations, and individuals, it was assumed that plaintiff was asking for permission to carry on the business of dealing in securities in Kansas. It now appears that it is not asking for permission to do business in the state, but only that it may sell shares of its stock within the state. Because of this misapprehension, some language was used at the close of the former opinion that was not appropriate to the real question involved.

The principal controversy which divided the parties was whether the plaintiff as organized was a true trust or a partnership, and it was determined that the trust agreement created a trust, and that the shareholders are not under any partnership or personal liability for the obligations or indebtedness of the trust. Upon a somewhat cursory examination the state charter board decided that the plaintiff was a partnership, and that the shareholders were personally liable for the debts of the trust, and therefore declined to go farther in the examination of the application or to pass upon its merits. The board assumed that plaintiff was seeking to do business in Kansas under an organization not recognized in the state. The permission sought, however, was not admission into the state for the purpose of doing business, and was no more than an opportunity to sell shares of stock with a view of raising money on which to do business. The general holding of the courts is that the doing of business is the exercise of some of the functions and the carrying on of the ordinary business for which the company is organized. (3 Words & Phrases, p. 2155; 6 Thompson's Commentaries on the Law of Corporations, § 7936; *Barse Live Stock Co. v. Range V. C. Co.*, 16 Utah, 59). Single and isolated transactions do not ordinarily constitute the doing of business (*Osborne v. Shilling*, 74 Kan. 675, 88 Pac. 258) and neither can the sale of shares or the ownership of stock of a nonresident company be regarded as within that term. (*Payson v. Withers*, Fed. Cas. No. 10,864, 5 Biss. 269; *United States v. American Bell Telephone Co.*, 29 Fed. 17.)

The right of the plaintiff to have its application considered is to be determined by what it is proposing to do now, and not by what it may hereafter undertake to do. It has been rightly

decided that under the constitution the plaintiff is to be treated as a corporation, and if it should apply for permission to do business in the state, it would be subject to the corporation law so far as the same is applicable to that class of corporations. Of course, there are provisions of the law relating to corporations that are not applicable to companies like the plaintiff, and the legislature has not as yet enacted statutes peculiarly applicable to that class of corporations. It will be time enough to determine what regulations should be applied when they are imposed upon a company like the plaintiff, or when a question arises as to their right to do business in the state. Regardless of its corporate character, or even of the lack of it, the plaintiff is entitled to have its application considered by the state charter board upon its merits, and upon the theory that there is no personal or partnership liability of shareholders, the same as if the application had been made by any other person, company or corporation. It devolves upon the board to inquire as to the solvency and responsibility of the plaintiff, the sufficiency of its assets, the trustworthiness of those representing and managing it, the fairness, honesty and equity of its plan, the security afforded investors, that its funds will not be dissipated or misappropriated, and if it is found to measure up to the statute in these and other respects, a permit may be issued to it. (Laws 1919, ch. 153.)

Having determined that the plaintiff is not a partnership, and further that the proposed sale of shares in the trust is not the doing of business within the accepted meaning of that term, it was the duty of the state charter board to consider and pass upon the merits of plaintiff's application, and the writ of mandamus as prayed for will therefore be issued.