**GRAHAM v. OMAR GASOLINE CO.**
**(No. 10592.)**

(Court of Civil Appeals of Texas. Fort Worth. May 12, 1923. Rehearing Denied June 16, 1923.)

1. **Joint-stock companies and business trusts** ⬳19—May sue to enjoin breach of contract and trespass without naming trustees and acting officers.

Under Rev. St. 1911, art. 6149, a common-law trust may sue to enjoin a breach of contract and a trespass, without naming its trustees and acting officers.

2. **Courts** ⬳155—District court may enjoin purchaser of oil and gas lease from breaking vendor's contract to sell gas to another and disconnecting latter's pipe lines, etc., though value of lease and contract is not alleged.

While the county courts have exclusive jurisdiction of cases involving more than $200 and not more than $500, the district court may enjoin the purchaser of an oil and gas lease from breaking lessee's contract to sell all the gas produced from oil wells on the land, disconnecting gas lines and meters installed thereon by vendee as authorized by the contract, and selling gas to others, though the value of the lease or contract is not alleged in the petition, the contract conveying an interest in the land, though title to the gas produced while in the ground was not specifically conveyed.

---

⬳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**3. Mines and minerals ⬠⟹74—Purchaser of oil and gas lease held bound by vendor's covenants with purchaser of gas produced by oil wells thereon.**

A purchaser of an oil and gas lease, with full notice of vendor's contract to sell all the gas produced from oil wells on the land to another and permit the latter to erect, operate, and maintain all materials, equipment, and structures necessary for performance, *held* bound by vendor's covenants; the contract imposing a servitude in the nature of an incorporeal hereditament, enforceable according to the party's intention, whether a covenant running with the land or not, against subsequent purchasers with notice, whether named in the instrument or not, and notwithstanding want of privity of estate.

**4. Injunction ⬠⟹118(2)—Petition must negative every reasonable inference against right to relief.**

The petition or application for a temporary injunction must negative every reasonable inference from which the court may conclude from other supposable facts that petitioner is not entitled to the relief sought.

**5. Injunction ⬠⟹11—Plaintiff must show actual or threatened irreparable injury.**

To obtain relief by injunction, plaintiff must show actual or threatened irreparable injury.

**6. Evidence ⬠⟹5(2)—Common knowledge that oil wells producing gas in quantities contracted for sometimes fail to do so later.**

It is a matter of common knowledge that oil wells producing gas in quantities required by a contract for the sale thereof sometimes fail later in such respect.

**7. Injunction ⬠⟹118(4)—Petition held insufficient as not alleging threatened irreparable injury.**

A petition alleging a contract to sell to plaintiff all the gas capable of producing gasoline "now or hereafter produced" by oil wells drilled or to be drilled on certain premises and plaintiff's compliance with the terms of the contract, but not alleging that, at the time or after the execution thereof, and particularly when the petition was filed, the wells were actually producing such gas in the quantity required by the contract, which contained no specific declaration that any wells producing such gas were in actual operation, and authorized vendee to terminate it whenever such gas was not produced in sufficient quantity to make it profitable to take it, *held* insufficient to show threatened irreparable injury, so as to to authorize a temporary injunction against breach of the contract, disconnection of plaintiff's gas lines and meters, and sale of gas to others.

**8. Courts ⬠⟹122—District court held without jurisdiction to enjoin threatened injury to personalty on land, in absence of allegations of value.**

Allegations of threatened injury to and destruction of gas pipes and other personalty installed and maintained on certain land by plaintiff, as authorized by his contract to purchase all the gas produced by oil wells thereon, *held* insufficient, in the absence of allegations as to the value of the property, to give the district court jurisdiction to grant a temporary injunction; the county court having exclusive jurisdiction in all cases involving more than $200 and not more than $500.

Appeal from District Court, Wichita County; P. A. Martin, Judge.

Suit by the Omar Gasoline Company against H. L. Graham. From an order granting a temporary injunction, defendant appeals. Order vacated and set aside, and writ dissolved.

T. B. Greenwood and Bonner, Bonner & Sanford, all of Wichita Falls, for appellant.

Weldon & McDonald, of Wichita Falls, for appellee.

CONNER, C. J. The Omar Gasoline Company, styling itself as a "common-law trust," instituted this proceeding against appellant, H. L. Graham, for the purpose of securing a temporary injunction. The prayer therefor was granted upon the allegations of the petition without notice, and from that order this appeal has been prosecuted.

It was alleged in the petition for the injunction, in substance, that the company, as we shall hereinafter designate appellee, had—

"entered into a written contract with the Sioux Oil & Refining Company for the purchase of all the casing-head gas and other gas produced on lot 1 and the west one-half of lot 3 of the W. F. George tract, block 818, Wichita county, Tex., at 12 cents per 1,000 cubic feet of casing-head gas delivered to the plaintiff as more fully shown by copy of such contract, attached to the pleading and marked Exhibit A and made a part of this petition for any and all purposes."

It was further alleged that the company had at all times faithfully complied with the provisions of said contract at great expense, and that later the Sioux Oil & Refining Company sold the lease described in said contract to the defendant, H. L. Graham; that at the time of such sale to Graham the contract so made an exhibit was of record, and that the defendant had due notice thereof. It was further alleged that the defendant Graham—

"has threatened to breach said contract and has threatened to destroy the personal property of the plaintiff on said lease, to disconnect the gas lines and meters now owned by this plaintiff and having been installed by said plaintiff on said lease at great expense, and the said defendant threatens further to sell said casing-head gas and gas to other parties than plaintiff; that plaintiff would show to the court that defendant was insolvent and unable to respond in damages for the breach in said contract, and that the threatened trespass on the part of the defendant would constitute an irreparable injury to plaintiff, and plaintiff has no adequate remedy at law."

---

⬠⟹For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

It is nowhere alleged in plaintiff's petition that the Omar Gasoline Company is a corporation or a partnership, nor does it give the name or names of persons composing the trust, and appellant insists that the plaintiff has not shown itself to be an entity, which, under the law, is entitled to maintain an action. The common law of England, when not inconsistent with the Constitution and laws of this state, constitutes, together with such Constitution and laws, the rule of decision in our courts (see article 5492, 'Rev. Statutes); but we have been unable to find any definition of the term "common-law trust." However, in describing the form of business organizations of the kind, it is said in Thompson on Corporations (2d Ed.) Cumulative Supplement 1922, § 6780, that the business organization commonly known as the "Massachusetts trust" is no more than "the adaption of the old common-law trust to the purpose of carrying on the enterprises," etc. And in speaking upon the same subject, the author of Dunn, Business Trust, says, among other things, on page 39:

"Trusts for business purposes are quite generally referred to as common-law companies, and they are generally referred to as organized under the common law. From the foregoing decisions it would seem that the phrase 'common-law company' as referring to a trust is a misnomer, for they are created in this country, as in England, under the right of citizens to contract."

Article 6149, of chapter 2, tit. 102, Rev. Statutes, provides that:

· "Hereafter any unincorporated joint-stock company or association, whether foreign or domestic, doing business in this state, may sue or be sued in any court of this state having jurisdiction of the subject-matter in its company or distinguishing name; and it shall not be necessary to make the individual stockholders or members thereof parties to the suit."

In Re Associated Trust (D. C.) a case reported in 222 Fed. 1012, it was held that an inventory petition in bankruptcy against "the associated trust, the voluntary association and unincorporated company maintaining its principal place of busines in Boston," etc., was "an unincorporated company," and subject to be adjudicated a bankrupt, though "voluntary associations" were not specifically referred to in the Bankruptcy Act. The "Home Lumber Company, a trust estate," was held to be within the blue sky laws of Kansas in the case of Home Lumber Co. v. Hopkins, 107 Kan. 153, 190 Pac. 601, 10 A. L. R. 879. In the case of Brotherhood of Railway Trainmen v. Cook, by the Amarillo Court of Civil Appeals, reported in 221 S. W. 1049 (writ refused), it was held that the appellant, an unincorporated association, constituted an entity for the purpose of litigation, within the purview of article 6149,

supra. Lloyd's Association was held by this court to be "an unincorporated association," within the meaning of the quoted statute, in the case of Merchants' & Mfgr.'s Lloyd's Ins. Exch. v. Southern Trading Co. of Texas (Tex. Civ. App.) 205 S. W. 352. While our judgment in this case was reversed by the Supreme Court, as will be seen by reference to 229 S. W. 313, our conclusion on the point under discussion was not disturbed.

[1-3] We accordingly conclude that under our statute the appellee was entitled to maintain the proceeding before us, even though, as it seems to us, it would have been more satisfactory to have named the trustees and acting officers of the Omar Gasoline Company. Appellee's petition specifies certain pipe and other personal property which it is averred had been extended and fixed upon the lease specified in the contract attached as an exhibit to the petition, but fails to allege its value or the value of its lease contract, and appellant insists that hence the jurisdiction of the court issuing the writ of injunction has not been made to affirmatively appear as required by our decisions. It is undoubtedly true that our county courts have exclusive jurisdiction in all cases where the amount in controversy exceeds $200 and is not in excess of $500, and that in such cases the county court and not the district court is empowered to issue writs of injunction. We are of the opinion, however, that the appellee's petition exhibits a right, easement, or interest in land over which the district court, and not the county court, has jurisdiction under our statutes. The lease attached as an exhibit to the plaintiff's petition recites that the Sioux Oil & Refining Company, a corporation, was the owner of a "valid oil and gas mining lease covering" the land described in the plaintiff's petition, and that as vendor it desired "to sell" and the Omar Gasoline Company desired "to purchase" any and all casing-head gas and other gas capable of producing gasoline then or thereafter produced "from the oil wells upon said" land. It was then provided:

"That vendor [the Sioux Oil & Refining Company] hereby sells and vendee [the Omar Gasoline Company] hereby buys, upon the terms and conditions set forth herein, all the casing-head gas and other gas produced from the oil wells drilled or hereafter to be drilled on the above-described land, ready for delivery at the wells or gas pumps now in operation or that may hereafter be in operation on said land."

The contract further provided, among other things, that:

"Vendee [the Omar Gasoline Company] shall have the right, so far as vendor has such right, to place, erect, operate, and maintain on the property above described all materials gathering lines, and other equipment and structures necessary or proper for the carrying out and performing of the terms of this agreement,

with the full and free right of ingress and egress to, from, and over said premises for the purpose of inspecting said material, gathering lines, and equipment, and of transporting and removing the same to, from, and over said premises."

The contract further provided that the Omar Gasoline Company should—

"at its own expense install sufficient meters of standard make for the measurement of said gas and shall keep them in first-class order and working condition."

While it may be said, and perhaps should be said, that title to the gas produced upon the lease while in the ground was not by the terms of the contract specifically vested in the Omar Gasoline Company, yet, considered as a whole, we think it must be said that it conveyed an interest in the lands, as contradistinguished from a simple interest in personal property. The lease under consideration we think distinguishable from the cases of Texas Co. v. Daugherty, by our Supreme Court, 107 Tex. 226, 176 S. W. 717, L. R. A. 1917F, 989, Pierce Fordyce & Co. v. Woodrum, 188 S. W. 247, by this court, and T. P. C. & O. Co. v. Fox, 228 S. W. 1028, also by this court, cited by appellee in opposition to the contention of appellant. The terms of the lease under consideration in the Daugherty Case, supra, were that the lessor or vendor "granted, bargained, sold, and conveyed" to the Texas Company, as grantee, "all the oil, gas, coal, and other minerals in and under" the particular tract of land described in the lease, accompanied with the usual tenendum and habendum clause, operating during the lease period, to be found in grants of title to land. Substantially the same terms were used in the lease under consideration in the Woodrum Case, supra. The lease under consideration in T. P. C. & O. Co. v. Fox, supra, also differs in its terms from that of the one under consideration. In this case a specific tract of land was leased, the vendee being granted full and exclusive authority to enter upon said premises and to dig, drill, operate for, and procure natural gas or petroleum, together with the right of taking upon said premises and removing therefrom at pleasure any machinery, tool, etc., and to construct and remove therefrom at pleasure pumping plants, tools, tanks, pipe lines, and other things necessary in the operation of the lease. In all the cases cited it was held that the lease conveyed an interest in land.

The lease under consideration, however, which may be seen by reference to the quotations therefrom that we have made, does not seem to specifically convey title to the gas in the ground, but apparently contemplates its acquisition and possession at the surface. The right, however, is conferred to enter upon the land to lay pipes, install meters for the measurement of the gas, main-

tain vacuums on the oil wells, etc. Such lease, we think, in legal effect is something more than an ordinary farm lease of the surface, and vested in the appellee at least an incorporeal hereditament or an interest in the land. Our view of the lease is so aptly presented in the brief of the able counsel for appellant that we shall quote therefrom and adopt the language in the main as our own. In presenting the contention that the lease under consideration contains no covenant running with the land, such as to bind appellant as a subsequent vendee of the Sioux Gas & Oil Company, counsel for appellant, with commendable frankness, has this further to say:

"On the other hand in fairness to the court, we deem it proper to say that it is a fair inference from this contract that the Omar Gasoline Company was to go upon the land and connect its pipes directly with the oil well thereon, and by means of vacuum extract the gas therefrom which would, perhaps, not otherwise be produced. Viewed in this light, the contract becomes in the nature of a grant of a profit à prendre, and imposed a servitude upon the property in the nature of an incorporeal hereditament, which would not lose its force or validity, although the land itself should pass to another purchaser, who, at the time of his purchase, had full notice of such servitude, and in the very cases cited above this distinction is mentioned, and Norcorss v. James, supra, very clearly expounds it. In the Texas case of T. & P. Ry. Co. v. Durrett, 57 Tex. 48, it was held that an instrument granting to the railroad company a right of way, together with the right to take coal, wood, water, etc., from the land, created an estate of even greater dignity than an easement, to wit, a profit à prendre, which is an estate in land; and it is of course settled law in Texas that an oil and gas lease, though not a conveyance of oil and gas in place, but an option to the lessee to enter upon the land and reduce the oil and gas to possession, is an interest in land. Texas Co. v. Daugherty, 107 Tex. 226, 176 S. W. 717, L. R. A. 1917F, 989. And it might be said that a similar right is created by the casing-head gas contract in question, and, even in the case of covenants, 'there is a growing tendency to incorporate equitable doctrines with common-law rules, and in equity covenants relating to land or its mode of use or enjoyment are frequently enforced against subsequent purchasers with notice, whether named in the instrument or not, and though there is no privity of estate. Furthermore, it is immaterial in such cases whether the covenants run with the land or not; the general rule being that it will be enforced according to the intention of the parties.' 7 R. C. L. p. 1125; Tiffany, Real Property, vol. 2, p. 1396."

Adopting the view so presented, we overrule the contention that the district court was without jurisdiction to issue the writ of injunction complained of, and likewise overrule the further contention that appellant is not bound by the covenants in the lease.

[4-7] Appellant, however, presents a further contention that we think must be sus-

tained. It is insisted that the petition under consideration fails to negative every reasonable hypothesis from which it might be inferred that the defendant had the right to do the acts complained of. The rule well established by the authorities undoubtedly is that the petition or application for a temporary injunction must negative every reasonable inference from which it may conclude from other supposable facts connected with the subject that he would not be entitled to the relief sought. See Collins v. Citizens' State Bank (Tex. Civ. App.) 241 S. W. 633; Graham v. Knight (Tex. Civ. App.) 222 S. W. 326; Weaver v. Emison (Tex. Civ. App.) 153 S. W. 923; Emde v. Johnson (Tex. Civ. App.) 214 S. W. 575 (writ refused).

Pretermitting a discussion of appellant's contention that the exhibit attached to the plaintiff's petition cannot be considered as supplying material averments of the petition under the operation of rule 19, p. 152 of Harris' Rules of the Courts, Annotated, we find that in neither petition nor exhibit does it specifically appear that any casing-head gas or other gas was ever produced from the wells on the lease in question. The petition alleges that the appellee on the 21st day of September, 1921, entered into a written contract for the purchase of all the casing-head gas and other gas produced upon the premises described, and made the contract a part of the petition, and alleged that the plaintiff had complied with its terms. But the petition fails entirely to allege that at the time or thereafter the wells, if any then in operation, were actually producing gas. And the lease or agreement referred to as the exhibit merely undertakes to sell to appellee "all casing-head gas and other gas capable of producing gasoline now or hereafter produced from the oil wells upon said" land, without any specific declaration that there then was in actual operation oil wells from which gas was being produced. The contract, after providing a method for the measurement of the gas that might be produced from the land, further provided that:

"Whenever casing-head gas or other gas produced from the oil wells upon the above-described land is not produced in sufficient quantity to make it profitable for vendee to begin or continue taking said gas under the terms of the said agreement, or when the gasoline content of said gas well is so small as to render the taking of said gas unprofitable to vendee, then vendee, upon payment of all existing obligations to vendor, shall have the right to terminate this contract upon the surrender for cancellation with proper release thereof duly executed and acknowledged, and thereupon this agreement shall cease and determine."

It is imperative, under our statutes and numerous decisions, that a plaintiff, in order to obtain relief by injunction, must show actual or threatened irreparable injury. If in fact no gas was being produced, or gas insufficient in quantity or in gasoline content to make it profitable for appellee to continue taking the gas, we fail to see how it can be said that he will be irreparably injured by the threatened acts. We think, therefore, that the petition should have affirmatively shown that the oil wells upon the lease in question, particularly at the time of filing its petition for the writ, were then producing gas in quantity and sufficient gasoline content to make it profitable to appellee to operate and continue in the exercise of the rights conferred upon him by the lease. It does not so appear from either the petition or the lease made a part thereof. If we should, by a liberal construction, infer that gas sufficient in quantity and gasoline content to make it profitable was being produced at the time of the execution of the lease from the fact that appellee entered into such contract, and the further fact that pursuant thereto he laid pipes, attachments, etc., as alleged, for the purpose of selling gas as contemplated, we yet can find no ground for a further inference that the requisite quantity and content continued and existed at the time of the filing of the petition. Mr. Clark, in his work on Contracts (3d Ed.) p. 595, says:

"Where the continued existence of a specific thing is essential to the performance of the contract, its destruction from no fault of either part operates as a discharge."

To the same effect is Williston on Contracts, vol. 3, § 1561. It follows that, if it be conceded that originally the oil wells were producing the requisite gas, but later failed in this respect, as such wells sometimes do fail, as we well know as a matter of common knowledge, and were not so producing at the time this action was instituted, then neither appellee nor appellant can be said to be bound by the covenants in the lease. It certainly cannot be said that under such supposable circumstances the threatened acts of the appellee, as presented in the petition, will bring about the irreparable injury so necessary to be shown.

[8] But appellee insists, in effect, that right to the writ nevertheless exists because of the allegations of threatened injury to and destruction of his pipes and other personal property situated upon the lease; but we think a sufficient answer to this phase of the case is that the value of such personal property is not stated, and hence jurisdiction of the district court cannot be upheld on this ground alone, for reasons and upon authorities relating to that subject presented under appellant's proposition that the county court has exclusive jurisdiction in all cases where the amount in controversy exceeds $200 and not in excess of $500. We conclude that the petition under con-

sideration fails to support the writ of injunction for which appellee prayed. The order of the court below, granting the writ, will be accordingly vacated and set aside, and the writ of injunction issued by virtue thereof dissolved.