

# THE ATTORNEY GENERAL

# OF TEXAS

GROVER SELLERS   AUSTIN 11, TEXAS

ATTORNEY GENERAL

Honorable Claude Isbell
Secretary of State
Austin, Texas

Attention:   Mr. Horace B. Sessions,
      Securities Commissioner.

Dear Sir:         Opinion No. 0-6515
            Re:   Construction of Art. 600a,
              V. A. C. S., in respect to
              the authority of Secretary
              of State to grant or deny
              application for permit to
              sell securities.

    We have received your recent request for an opinion, appearing as follows:

    "This Division has recently denied an application for the sale of securities in Texas by an underwriting group out of Chicago and the applicant through a local attorney has questioned the authority of the Secretary of State under Section 8 of the Texas Securities Act to pass upon the sale of securities to prospective investors in Texas as being fair, just and equitable. Since we find no Texas cases and no Attorney General's Opinion on the question we are herewith submitting the matter to your office.

    "We briefly outline that the applicant is a nonresident manufacturing company desiring to sell an issue of debentures and common stock in several sections of the United States by registration of the securities with the Federal Securities and Exchange Commission and registration with those States in which a portion of the securities will be offered and sold. The company itself will receive proceeds from the sale of the debentures less the usual underwriting discounts and commissions.

    "In addition to the debentures the company as applicant is seeking to qualify a total of 350,000 shares of $1.00 per value common stock for sale to the public at $10.00 per share, 300,000 shares of which

are owned by one family and the proceeds from the
sale of this 300,000 shares will go to the stockholders
and no part of such proceeds will be received by the
company. From the total of 350,000 shares of common
stock to be sold the controlling stockholders will
receive $2,595,000.00 and the company will receive
$432,500.00 after deduction of the underwriting dis-
counts and commissions. While the company has a fair
earning record and has paid dividends of .50 per share
in 1944, the net asset value of the stock is approxi-
mately $2.12 per share. The applicant was advised in
writing that the Texas application was denied as the
plan of the issuer did not appear to be fair, just
and equitable.

"The local counsel for the underwriting group
seeking to qualify the securities in the name of the
company contends that, until 'the proposed plan of
business' referred to in Section 8 of the Texas Secur-
ities Act, in this instance the manufacture of radio
parts and equipment, is found to be unfair, unjust and
inequitable, the Secretary of State can not refuse the
application, unless of course, it may further find that
the securities and methods used in issuing and disposing
of same would work a fraud upon investors under the pro-
visions of Section 8.

"The local counsel for the company was advised
that it has been the policy of this Department to
interpret the language 'proposed plan of business'
under Section 8 to mean the proposed plan of the
applicant, in this case the issuer, seeking to qualify
securities. The information called for under Sections
5, 6 & 7 of the Texas Securities Act would not indicate
that it was intended that the language 'proposed plan
of business' be given a meaning restricted to the
corporate business for which the company was organized.
In the instant case the plan and method of the company
as applicant in qualifying common stock of controlling
stockholders liquidating their interests in the company
is of major concern to the Texas investing public,
and such plan and method has no primary relation to
whether the company's manufacture of radio equipment and
parts is fair, just and equitable. Such a restricted
meaning would of course give no authority to this
Department to pass upon whether or not the price at
which a controlling stockholder is bailing out by
disposing of his personal holdings in a company might
be fair, just and equitable.

"I am sure you appreciate that this raises a question as to whether the Texas Securities Act is intended to be merely a full disclosure statute requiring the Department to pass favorably upon all applications for registration of securities unless there is such misrepresentation and failure to disclose material facts as might be considered fraudulent under the definition of the term found in Section 2 (f), or, the Department is charged with the responsibility of passing upon whether or not it may be fair, just and equitable for any particular issue of securities to be offered and sold in Texas after giving consideration to the price, financial condition, earnings, dividend payments, and other factors relating to the company and disposition of the securities as distinguished from merely passing upon whether the corporate business engaged in by the issuer is fair, just and equitable. In this connection it will be noted that there is an absence of any provision in the Texas Securities Act for the publication or use of a prospectus making full disclosure in connection with an offering of securities as is usually required under a full disclosure statute.

"We shall appreciate your favoring us with an opinion on the question of whether or not the Secretary of State may deny an application for registration of securities under the Texas Securities Act on the grounds that the plan of the applicant (issuer, underwriter, or dealer) seeking to qualify the securities appears unfair, unjust, and inequitable upon consideration of all factors concerning which the applicant is required to furnish information under the provisions of the Act."

As we understand your question, you are not calling upon the Attorney General for a decision in the particular fact situation presented in your letter, but you are merely requesting an interpretation of Section 8 of Article 600a, Vernon's Annotated Civil Statutes, in respect to the authority of the Secretary of State to grant or deny an application for a permit for the sale of securities, and said fact situation is presented solely for the purpose of stating the question in concrete form.

With the understanding that we are not passing upon the fact situation submitted in your communication, we shall proceed to answer your question.

Subsection (f) or Sec. 2, of Art. 600a, V. A. C. S.,

provides as follows:

"The terms 'fraud,' 'fraudulent practice' shall include any misrepresentations, in any manner, of a relevant fact; any promise or representation or prediction as to the future not made honestly and in good faith, or an intentional failure to disclose a material fact; the gaining, directly or indirectly, through the sale of any security, or an underwriting or promotion fee or profit, selling or managing commission or profit, so gross or exorbitant as to be unconscionable; any scheme, device or other artifice to obtain such profit, fee or commission; provided, that nothing herein shall limit or diminish the full meaning of the terms 'fraud,' 'fraudulent,' and 'fraudulent practice' as applied or accepted in courts of law or equity."

Sections 5, 6, and 8 of Art. 600a, V. A. C. S., provide as follows:

"Sec. 5. No dealer, agent or salesman shall sell or offer for sale any securities issued after the passage of this Act, except those which come within the classes enumerated in Subdivisions (a) to (c), both inclusive, of Section 3 of this Act, or Subdivisions (a) to (l), both inclusive of Section 23 of this Act, until the issuer of such securities shall have been granted a permit by the Secretary of State, and no such permit shall be granted by the Secretary of State until the issuer of such securities shall have filed with the Secretary of State a sworn statement verified under the oath of an executive officer of the issuer and attested by the secretary thereof, setting forth the following information:

"(a) The names, residences and post office addresses of the officers and directors of the company.

"(b) The location of its principal office and of all branch officers in this State, if any.

"(c) A copy of its articles of incorporation or partnership or association, as the case may be, and of any amendments thereto, if any. If a corporation, a copy of all minutes of any proceeding of its directors, stockholders or members relating to or affecting the issue of said security. If a corporation, a copy of its by-laws and of any amendments thereof. If a trustee, a copy of all instruments by which the trust is created and in which it is accepted, acknowledged or declared.

"(d) A statement showing the amount of capital stock, if any, and if no capital stock, the amount of capital of the issuer that is contemplated to be employed; the number of shares into which such stock is divided, or if not divided into shares of stock, what division is to be made or is contemplated; the par value of each share, or if no par stock, the price at which such security is proposed to be sold; the commission to be paid for the sale of same, including any and all compensation of every nature that is in any way to be allowed for the sale of same; and how such compensation is to be paid - whether in cash, stock, service, or otherwise, or partly of either or both; also, the amount of cash to be paid, or stock to be

issued for promotion and/or organization services and expenses, and the amount of promotion and/or organiza- tion services and expenses which will be assumed or in any way paid by the issuer.

"(e) Copies of certificates of the stock and all other securities to be sold, or offered for sale, together with application blanks therefor; a copy of any contract it proposes to make concerning such security; a copy of any prospectus or advertisement or other description of security prepared by or for it for distribution or publication.

"(f) A detailed statement showing all the assets and all the liabilities of the issuer, said statement to reflect the financial condition of the issuer on a day not more than ten (10) days prior to the date such statement is filed. Such statement shall list all assets in detail and shall show how the value of such assets was determined - that is, whether the value set forth in said statement represents the actual cost in money of such assets, or whether such value represents their present market value, or some other value than the actual cost in money, and shall show the present actual value of said assets; also, whether the value set forth in the statement is greater or less than the actual cost value in money and greater or less than the present market value of such assets. If any of the assets consist of real estate, then said statement shall show the amount for which said real estate is rendered for state and county taxes, or assessed for taxes. If any such assets listed shall consist of anything other than cash and real estate, same shall be set out in detail so as to give the Secretary of State the fullest possible information concerning same, and the Secretary of State shall have the power to require the filing of such additional information as he may deem necessary to determine whether or not the true value of said assets are reflected in the statement filed. Should any of the assets listed in said statement be subject to any repurchase agreement, or any other agreement of like character, by the terms of which the absolute ownership of, or title to said assets is qualified or limited in any way, then the terms and conditions of said agreement by which the absolute ownership of, or title to said assets is qualified or limited, as well as the amount and character of the assets subject thereto shall be fully stated. Said statement shall list all current liabilities - that is, all liabilities which will mature and become due within six (6)

months from the date of such application, and shall
list separately from such current liabilities, all
other liabilities, contingent or otherwise, showing
the amount of those which are secured by mortage
or otherwise, the assets of the issuer which are
subject to such mortage, and the dates of maturity
of any such mortage indebtedness. Such application
shall also include a detailed profit and loss
statement, which shall cover the last three (3)
years operations of the issuer, if such issuer has
been in operation for three (3) years - but, if
not, said profit and loss statement shall cover
the time that said issuer has been operating.
If said issuer has not been operating, but is taking
over a concern of any kind which has been previously
operating, then a financial and profit and loss
statement showing the operations of the concern
thus taken over for a period of the last three
(3) years next preceding the taking over of said
concern shall be included in said statement; said
profit and loss statement shall clearly reflect
the amount of net profit or net loss incurred
during each of the years shown.

"Sec. 6. If the application be filed for
or on behalf of an issuer organized under the laws
of any other state, territory, or goverment, or
domiciled in any other state than Texas, such
application shall also contain a certificate
executed by the proper officer of such state, terri-
tory or government dated not more than thirty (30)
days prior to the date of filing of the application
showing that such issuer is authorized to transact
business in such state, territory or government,
and is not delinquent in any taxes or assessments
required to be paid to such state, territory or
government. Such applicant shall also by written
instrument duly executed by an executive officer
thereof, under proper resolution of its board of
directors, and authenticated and attested by the
seal of said issuer, appoint the Secretary of State
of Texas irrevocably its true and lawful attorney
upon whom all process in any action or proceeding
against it may be served with the same effect as if
such issuer were organized or created under the
laws of this State and had been lawfully served
with process therein. It shall be the duty of
the Secretary of State, whenever he shall have
been served with any process as is herein provided,

to forward same by United States mail to the home office of such issuer.

"Sec. 8. Upon the filing of an application, it shall be the duty of the Secretary of State to examine the same and the papers and documents filed therewith. If he finds that the proposed plan of business of the applicant appears to be fair, just and equitable, and that the securities which it proposes to issue and the methods to be used by it in issuing and disposing of the same are not such as will work a fraud upon the purchaser thereof, the Secretary of State shall issue to the applicant a permit authorizing it to issue and dispose of such securities. Should the Secretary of State find that the proposed plan of business of the applicant appears to be unfair, unjust or inequitable, he shall deny the application for a permit and notify the applicant in writing of his decision. Any issuer, as the same is defined herein, who is dissatisfied with any ruling or decision of the Secretary of State, may file within ten (10) days thereafter, an application for a hearing before the Secretary of State, who shall, within ten (10) days after the receipt of such application, set said hearing at such time and place as he may fix, and shall give said applicant ten (10) days notice of such hearing. Such applicant may appeal from any ruling or decision made at such hearing in the same manner and in the same form as is hereinafter provided for appeals by or on behalf of dealers, and the rules applicable thereto and the relief to be had shall be the same.

Further condensing your question, we believe that your inquiry will be fully answered by our interpretation of the meaning of the following sentence contained in Sec. 8, Art. 600a, supra:

"If he finds that the proposed plan of business of the applicant appears to be fair, just and equitable, and that the securities which it proposes to issue and the methods to be used by it in issuing and disposing of the same are not such as will work a fraud upon the purchaser thereof, the Secretary of State shall issue to the applicant a permit authorizing it to issue and dispose of such securities."

We first must determine what constitutes the "proposed plan of business" of an applicant such as the one mentioned by you. In the case of Home Lumber Co. et al vs. Hopkins, Attorney General, et al, 190 Pac. 601, wherein an application for writ of mandamus was granted by the Supreme Court of Kansas, compelling the state charter board to consider and pass upon the merits of an application of a trust company seeking to sell shares of its stock in the State of Kansas, the following was said:

> "The board assumed that plaintiff was seeking to do business in Kansas under an organization not recognized in the State. The permission sought, however, was not admission into the state for the purpose of doing business, and was no more than an opportunity to sell shares of stock with a view of raising money on which to do business. The general holding of the courts is that the doing of business is the exercise of some of the functions and the carrying on of the ordinary business for which the company is organized."

While not determinative of our question, we believe the above expression of the Kansas Supreme Court warrants our eliminating the selling of stock and debentures by the company in question from the category of "plan of business". In the illustrative fact situation on hand, we find that the applicant is a nonresident "manufacturing" company engaged in manufacturing radio parts and equipment. It must be assumed that in order to begin its manufacturing it had to organize itself under the laws of its domicile, also that in order to raise money "on which to do business" it issued debentures and common stock. We see no reason why all this would not be properly classified as component parts of the "business" or "plan of business" of the applicant. If the manufacturing, organization, financing, liabilities and assets, etc., in other words - the corporate structure - of applicant are deemed fair, just and equitable by the Secretary of State, as appearing in the statement filed by applicant, then he is authorized to issue a permit for such securities (debentures and stock) to be sold in Texas, provided that such securities, as they are proposed to be sold in this State compared with their true worth as indicated by the stated condition of the company, are not such as will work a fraud upon the purchaser thereof. We think the intent of the provision of the statute in question was to apply the test of fairness, justness and equitableness to everything done by the applicant company, for which a report or statement must be filed, other than that done in respect to the selling of its securities. The sale value of same, together with the method and manner of

selling same, was intended to be tested by the standard of fraud. This distinction can be seen when it is recalled that stock or debentures could be issued in respect to their actual value fair, just and equitable, while same could be put up for sale at a value such as to work a fraud on the purchaser. We do not believe that said Art. 600a, supra, gives any authority for the Secretary of State to engage in "price fixing" of securities, unless a fraud is thereby perpetrated on the investor as provided in Subsection (f) of Sec. 2, Art. 600a, supra. However, we believe the Legislature by its definition of "fraud" and "fraudulent practice" in said Subsection (f) of Art. 600a, supra, i. e., "the gaining, directly or indirectly , through the sale of any security, or any underwriting or promotion fee or profit, selling or managing commission or profit, so gross or exorbitant as to be unconscionable; any scheme, device or other artifice to obtain such profit, fee or commission;" authorized the refusal to issue a permit on the grounds of fraud in cases where the proposed selling price of the securities is so out of line with their actual value as to make the selling profit on same "so gross or exorbitant as to be unconscionable." This would be a question of fact to be determined in any given case by the findings of the Secretary of State.

We trust the foregoing fully answers your inquiry.

Yours very truly,

ATTORNEY GENERAL OF TEXAS

BY /s/ Robert L. Lattimore, Jr.
Robert L. Lattimore, Jr.
Assistant

RLL:LJ -dhs

APPROVED APR. 30, 1945
/s/ Carlos C. Ashley
FIRST ASSISTANT ATTORNEY GENERAL

APPROVED
OPINION
COMMITTEE
BY L.P.L.
CHAIRMAN